**Gary W. Osborne (Bar No. 145734)**
**Dominic S. Nesbitt (Bar No. 146590)**
OSBORNE & NESBITT LLP
101 West Broadway, Suite 1330
San Diego, California 92101
Phone: (619) 557-0343
Fax: (619) 557-0107
gosborne@onlawllp.com
dnesbitt@onlawllp.com

Attorneys for Plaintiff, STEM, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEM, INC.,<br>a Delaware Corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,<br><br>  Defendant. | CASE NO.<br><br>**COMPLAINT FOR BREACH OF CONTRACT; TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; DECLARATORY RELIEF; AND FOR PUNITIVE DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Stem, Inc. respectfully alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. The matter in controversy is between citizens of different states. Plaintiff, Stem, is diverse of citizenship from Defendant, Scottsdale Insurance Company. Stem was incorporated in Delaware and has its principal place of business in Millbrae, California. Scottsdale, on the other hand, was incorporated in Ohio and has its principal place of business in Scottsdale, Arizona.

3. Venue is proper in this District under 28 U.S.C. §1391(b)(1), (c)(2) and (d) in that Scottsdale is subject to personal jurisdiction in this District and therefore is deemed to reside here. Venue is also proper under 28 U.S.C. §1391(b)(2) because the policies of insurance which are the subject of this action were entered into and were to be performed within this District, and the underlying events giving rise to Stem's claim for coverage occurred within this District.

## INTRADISTRICT ASSIGNMENT

4. This action arises in San Mateo County because it arises out of the breach of certain policies of insurance which were entered into, and were to be performed, within San Mateo County. Accordingly, this action should be assigned to the Oakland Division.

## THE PARTIES

5. Stem is in the business of developing technological solutions that help commercial, government, and utility customers store and manage electrical power.

6. Scottsdale is Stem's liability insurer, duly licensed to do business in the State of California.

## GENERAL ALLEGATIONS

**A.    The Scottsdale Policies**

7. Scottsdale insured Stem and its directors and officers under consecutive "Business and Management Indemnity" policies issued annually from October 27, 2011 to October 27, 2018. Two of these policies are at issue in this coverage action.

8. The first Scottsdale policy at issue is designated by policy number EKS3113947, and had a policy period of October 27, 2013 to October 27, 2014 (the "2013-2014 Policy").

9. The second is designated by policy number EKS3202928, and had a policy period of October 27, 2016 to October 27, 2017 (the "2016-2017 Policy").

10. Each policy has a relevant aggregate limit of $3,000,000, subject to self-insured retentions of $2,500 under the 2013-2014 Policy and $25,000 under the 2016-2017 Policy.

11. The policies' "**INSURING CLAUSES**" provision reads, in relevant part, as follows:

> The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against [them] during the **Policy Period** . . . and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

12. "**Loss**" is defined to include legal fees, expenses, and settlements.

13. "**Claim**" is defined to include a civil proceeding for monetary damages.

14. "**Wrongful Act**" is defined broadly to include any "error," "omission," "breach of duty" or "act" by the "**Directors and Officers**" while acting in their capacity as such.

15. "**Directors and Officers**" is a phrase defined to include "any person who was, now is, or shall become: . . . a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**."

16. "**Company**" is defined to mean Stem.

17. Both Scottsdale policies are written on a "claims made" basis, meaning they only cover a "**Claim**" first made against an insured during the policy period.

18. The policies also contain what is commonly referred to as an "Awareness Provision." This provision permits Stem to "lock in" coverage under a particular policy by giving written notice to Scottsdale, during the policy period,

"of facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**." If such a notice of facts or circumstances is given by Stem to Scottsdale, the Awareness Provision provides that "any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notices [sic] was received by the **Insurer**."

B. **Stem's Notice To Scottsdale Of "Facts Or Circumstances" Which May Reasonably Give Rise To A Future Claim**

19. On October 17, 2014, during the term of the 2013-2014 Policy, Stem provided to Scottsdale a notice of facts or circumstances pursuant to that policy's Awareness Provision. Specifically, Stem made Scottsdale aware of a December 31, 2013 letter it had received from one of its shareholders, Richard A. Grimm, which requested information about a transaction at Stem known as the "Series B Financing." Mr. Grimm stated in his letter that his request was being made for the purpose of "obtaining information necessary to permit me to plead particularized facts should I elect to pursue litigation against the Corporation or any of its officers or board members in connection with the Financing."

C. **Scottsdale Acknowledges Stem's Notice Of Facts Or Circumstances**

20. On January 23, 2015, Scottsdale responded to Stem's October 17, 2014 notice of facts or circumstances. Scottsdale denied there was yet any Claim triggering coverage under the 2013-2014 Policy, but stated "[w]e will, however, treat this matter as a notice of facts or circumstances which may reasonably give rise to a future **Claim** . . . ." (Underscore in original.)

D. **The 2017 Shareholder Lawsuit**

21. On May 12, 2017, Mr. Grimm, along with three other shareholders of Stem, namely Stacey Reineccius, Gregory Klingsporn, and Brenda Berlin, filed a lawsuit in the Superior Court of California for the County of San Mateo, entitled *Stacey Reineccius, et al. v. Zeb Rice, et al.*, and assigned Case No. 17CIV02098

COMPLAINT
4

(hereafter the "Underlying Lawsuit"). This Underlying Lawsuit, which includes a claim related to the Series B financing, remains pending and is being actively litigated.

22. Stem itself is not named as a defendant in the Underlying Lawsuit. Among the five named defendants, however, three qualify as insureds under the Scottsdale policies. These insured defendants are Zeb Rice, John Carrington and David Buzby, all of whom are now, or have been, members of Stem's board of directors.[1]

23. The Underlying Lawsuit includes three causes of action against Messrs. Rice, Carrington, and Buzby for Breach of Fiduciary Duty, Conspiracy and Unjust Enrichment. These causes of action are in part premised upon allegations of wrongful acts taken in 2013 to dilute the value of the underlying plaintiffs' stock holdings, and to appropriate their equity. According to the Underlying Lawsuit, the vehicle by which Messrs. Rice, Carrington, and Buzby accomplished this was the Series B Financing and subsequent transactions.[2]

24. The Underlying Lawsuit also includes a separate and unrelated allegation of a wrongful act by defendant Buzby. Specifically, it is alleged that Mr. Buzby earned a windfall after extending a short-term loan to Stem in 2017 in the amount of $1,500,000. It is further alleged that after this loan was paid in full one month later, Mr. Buzby received cash and stock worth over $2 million. The Underlying Lawsuit alleges this transaction "constitutes self-dealing and is a separate breach of [Mr. Buzby's] fiduciary duty to Plaintiffs."

---

[1]   Also named as defendants in the Underlying Lawsuit are two non-insured entities, namely Angeleno Group, LLC and GE Ventures, LLC. These entities are alleged to be Stem's controlling shareholders who aided and abetted the wrongful actions taken by Stem's directors.

[2]   As discussed above, the Series B Financing was the subject of Stem's earlier notice to Scottsdale of facts or circumstances under the 2013-2014 Policy's Awareness Provision.

COMPLAINT
5

25. On December 13, 2019, a First Amended Complaint was filed that largely repeats the allegations from the Original Complaint; however, Stacey Reineccius and Brenda Berlin, having settled their respective claims, are no longer plaintiffs.

**E.     Stem's Tender**

26. On June 2, 2017, Stem tendered the Underlying Lawsuit to Scottsdale. By letter dated July 27, 2017, Scottsdale responded by notifying Stem there was no coverage available for the Underlying Lawsuit under either the 2013-2014 Policy or the 2016-2017 Policy.

**F.     Scottsdale's Wrongful Denial Under the 2013-2014 Policy**

27. Since the Underlying Lawsuit included a claim related to the Series B Financing – the precise subject of Stem's prior notice of facts or circumstances under the 2013-2014 Policy's Awareness Provision – Scottsdale limited its coverage analysis to the 2013-2014 Policy. However, Scottsdale wrongfully disclaimed coverage under this policy based upon two policy exclusions.

28. The first of the two exclusions relied upon by Scottsdale to deny coverage under the 2013-2014 Policy is a Prior & Pending Proceeding Exclusion. Scottsdale represented in its denial letter that the Prior & Pending Proceeding Exclusion was implicated because the Underlying Lawsuit alleges and arises out of a 2010 employment dispute between Mr. Reineccius and Stem.

29. Scottsdale's invocation of this exclusion was arbitrary, erroneous and unreasonable. Mr. Reineccius' employment dispute with Stem is described in the Underlying Lawsuit for background only. As Scottsdale is well aware from the investigation it conducted, the employment dispute between Mr. Reineccius and Stem was fully settled in 2011. Having been fully settled, the dispute is not being litigated, and cannot be litigated, in the Underlying Action. It is has been fully resolved and has no relevance to the potential liability now facing Messrs. Rice, Carrington and Buzby.

30. The plaintiff shareholders' causes of action that are *actually* being litigated in the Underlying Lawsuit are legally and factually distinct claims, in every material respect, from Mr. Reineccius' settled employment dispute, and are based upon entirely separate and non-overlapping alleged wrongful acts. As such, Scottsdale's invocation of the Prior & Pending Proceeding Exclusion to disclaim its coverage obligations was improper and in bad faith.

31. The second exclusion relied upon by Scottsdale to deny coverage under the 2013-2014 Policy is an Insured v. Insured Exclusion. It is similarly, and just as plainly, inapplicable to the Underlying Lawsuit. While one of the original plaintiffs, namely Mr. Reineccius, was a former director of Stem, and therefore an insured, there is an express exception to the Insured v. Insured Exclusion for claims brought by former directors when brought in their capacity as securities holders of the company. Because it was obvious from the face of the Underlying Lawsuit that Mr. Reineccius was suing only in his shareholder capacity, and all other conditions of this exception are met, the Insured v. Insured Exclusion has no application. Additionally, three of the plaintiffs who filed the Underlying Lawsuit, Mr. Grimm, Mr. Klingsporn and Ms. Berlin, have never been directors or officers of Stem. On its face, therefore, the Insured v. Insured Exclusion manifestly has no application to their claims. For all the foregoing reasons, Scottsdale had no reasonable justification for invoking the Insured v. Insured Exclusion to deny a defense obligation and withhold the coverage otherwise available to its insureds under the 2013-2014 Policy.

**G.     Scottsdale's Wrongful Denial Under the 2016-2017 Policy**

32. As noted *supra*, in view of Stem's prior notice of facts or circumstances, Scottsdale limited its coverage analysis to the 2013-2014 Policy. This decision by Scottsdale, to limit its analysis to one policy only, was erroneous. The 2016-2017 Policy was also implicated by allegations in the Underlying Lawsuit.

33. In this regard, while the Underlying Lawsuit is *partly* premised on a claim related to the 2013 Series B Financing – a claim deemed made under the 2013-2014 Policy in light of Stem's earlier notice of facts or circumstances – the lawsuit also includes a separate and unrelated claim against Mr. Buzby concerning repayment of a short-term loan he made to Stem in 2017. The Underlying Lawsuit expressly alleges this claim of self-dealing by Mr. Buzby in 2017 constitutes a "separate breach" of his fiduciary duty.

34. This claim against Mr. Buzby, based on a loan to Stem he allegedly made in 2017, is legally and factually unrelated to the 2013 Series B Financing that was the subject of Stem's 2014 notice of facts and circumstances. It is a separate and distinct claim, based on events occurring in 2017. As such, Scottsdale should have extended coverage for this claim under its 2016-2017 Policy.

35. As a result of Scottsdale's wrongful coverage denials under both its 2013-2014 Policy and 2016-2017 Policy, Stem has been forced to incur legal fees and settlement costs in connection with the Underlying Lawsuit.

## FIRST CLAIM FOR RELIEF

### Breach of Contract (the 2013-2014 Policy)

36. Stem incorporates and re-alleges paragraphs 1 through 31 and paragraph 35 as though fully set forth herein.

37. Stem performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the 2013-2014 Policy.

38. Scottsdale has breached the terms of the 2013-2014 Policy by wrongfully disclaiming a coverage obligation, thereby forcing Stem to incur defense costs and settlement costs on behalf of Messrs. Rice, Carrington and Buzby.

39. Stem has been damaged in an amount to be proven at trial. Said damages exceed the jurisdictional minimum required by this court.

## SECOND CLAIM FOR RELIEF
## Breach of Contract (the 2016-2017 Policy)

40. Stem incorporates and re-alleges paragraphs 1 through 35 as though fully set forth herein.

41. Stem performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the 2016-2017 Policy.

42. Scottsdale breached the terms of the 2016-2017 Policy by wrongfully disclaiming a coverage obligation, thereby forcing Stem to incur defense costs and settlement costs on behalf of Messrs. Rice, Carrington and Buzby.

43. Stem has been damaged in an amount to be proven at trial. Said damages exceed the jurisdictional minimum required by this court.

## THIRD CLAIM FOR RELIEF
## Tortious Breach Of The Implied Covenant
## Of Good Faith And Fair Dealing

44. Stem incorporates and re-alleges paragraphs 1 through 35, 37 through 39, and 41 through 43 as though fully set forth herein.

45. A relationship of trust and confidence was established between Stem on the one hand, and Scottsdale on the other, by virtue of Stem's status as the named insured under the Scottsdale policies. Scottsdale had a duty to deal fairly and in good faith with Stem in all matters between them.

46. Stem is informed and believes and on that basis alleges that Scottsdale breached its duty of good faith and fair dealing when, among other things, it did the following:

    a. Wrongfully and unreasonably denied coverage in conscious disregard of California insurance law and Stem's rights;

    b. Failed to undertake any meaningful investigation of Stem's tender;

      c.      Failed to acknowledge a defense obligation to its insureds immediately upon learning facts establishing a potential for covered liability;

      d.      Failed to acknowledge a defense obligation based upon the arbitrary and unreasonable application of policy exclusions which is in direct contravention of California law;

      e.      Failed to give at least as much consideration to the welfare of its insureds as it did to its own interests; and

      f.      Ignored California law in evaluating its defense obligations.

47. As a direct and proximate result of the above-mentioned breaches of the duty of good faith and fair dealing, Stem has been damaged in an amount to be proven at trial, which exceeds the jurisdictional minimum required by this Court.

48. Stem is informed and believes and on that basis alleges that Scottsdale denied insurance benefits despite knowing facts which clearly and unambiguously demonstrated that it owed a defense obligation against the Underlying Lawsuit. Despite this knowledge, Scottsdale made a calculated decision to wrongfully deny a defense obligation, and gamble that its denial would go unchallenged. Scottsdale intentionally disclaimed a defense obligation despite knowledge of its coverage obligations, and acted with an intent to enrich itself while injuring and harming Stem. Scottsdale's conduct in this matter satisfies the statutory grounds of "oppression, fraud or malice" so as to justify an award of punitive damages in order to punish it and to deter such conduct in the future.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief

49. Stem incorporates and re-alleges paragraphs 1 through 35, 37 through 39, and 41 through 43 as though fully set forth herein.

50. Stem contends that the Underlying Lawsuit, which is ongoing and names three of Stem's directors as defendants, triggers Scottsdale's defense

obligations under its 2013-2014 Policy and 2016-2017 Policy. Scottsdale, on the other hand, contends it owes no coverage obligations under either policy.

51.  An actual controversy has, therefore, arisen and currently exists between Stem on the one hand, and Scottsdale on the other, and a judicial determination of such controversy is necessary and appropriate at this time.

52.  Accordingly, Stem seeks a declaration from the Court that the Underlying Lawsuit triggers Scottsdale's defense obligations under its 2013-2014 Policy and 2016-2017 Policy.

**WHEREFORE**, Stem prays for judgment against Scottsdale as follows:

1. For damages sustained as a result of the breaches and tortious breaches of contract alleged herein, according to proof;
2. For a declaration that the Underlying Lawsuit triggers Scottsdale's defense obligations under its 2013-2014 Policy and 2016-2017 Policy;
3. For attorney's fees including, but not limited to, an award of attorney's fees pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985);
4. For punitive damages pursuant to California Civil Code section 3294; and
5. For prejudgment interest, costs and expenses of suit, and such other and further relief as the Court deems just and proper

DATED: April 29, 2020                         OSBORNE & NESBITT LLP

                                              By:  /s/ Gary W. Osborne
                                                   Gary W. Osborne
                                                   Attorney for Plaintiff, STEM, INC.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Stem, Inc. hereby demands a jury trial on all issues so triable.

DATED: April 29, 2020          OSBORNE & NESBITT LLP

By: /s/ Gary W. Osborne
    Gary W. Osborne
    Attorney for Plaintiff, STEM, INC.