IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEM, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 20-cv-02950-CRB<br><br>**ORDER DENYING MOTION TO DISMISS** |

　　　　Plaintiff Stem, Inc. ("Stem"), a technology company specializing in electrical power, brings suit against its liability insurer, Defendant Scottsdale Insurance Co. ("Scottsdale"). In its motion to dismiss, Scottsdale argues that, based on policy exclusions, it owes no duty to defend or indemnify Stem in an underlying action that names three of Stem's current and former directors as defendants. See generally Scottsdale MTD (dkt. 14). Stem asserts that the cited policy exclusions are inapposite, and that Scottsdale wrongfully disclaimed its coverage obligation. As explained below, because Scottsdale has not established the absence of any potential for coverage, the Court DENIES the motion.

## I. BACKGROUND

Stem is a technological solutions company that focuses on helping customers store and manage electrical power. See Compl. (dkt. 1) ¶ 5. Scottsdale insured Stem and its directors and officers against Loss including "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court," and other costs under consecutive annual "Business and Management Indemnity" policies from October 27, 2011 to October 27, 2018. See Compl. ¶ 7; see also RJN Ex. A (dkt. 15-1) ("2013–2014 Policy") at 2 of 8.[1] Scottsdale's insurance coverage was subject to exclusions, including an Insured v. Insured Exclusion which barred claims "brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity . . . ." 2013–2014 Policy at 4 of 8 (emphasis in original). Additionally, "matters uninsurable under the laws pursuant to which this **Policy** is construed" and "punitive or exemplary damages," were excluded from the definition of Loss. Id. at 2 of 8 (emphasis in original).

In 2010, Stacey Reineccius, a former director and officer of Stem, claimed he was wrongfully terminated. See Scottsdale MTD at 3–4; see also Compl. ¶ 28. Stem and Reineccius resolved the ensuing employment dispute by entering into a Settlement Agreement on March 28, 2011. Stem Opp'n to Scottsdale MTD (dkt. 16) at 6; see also Scottsdale MTD at 4; Compl. ¶ 29. The Settlement Agreement provides that Reineccius was terminated from Stem on September 22, 2010, and was removed from Stem's board on October 28, 2010. Stem Opp'n to Scottsdale MTD at 6; see also Stem Opp'n to Scottsdale MTD Ex. A (dkt. 16-3) ("Settlement Agreement") at 1 of 22.[2] Pursuant to the Settlement Agreement, Reineccius released Stem from any and all claims

---

[1] The 2013–2014 Policy is not attached to the Complaint, but the Court finds that it is incorporated by reference in the Complaint. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). The Complaint goes beyond "the mere mention of the existence of" the insurance policy. See id. The policy's language "forms the basis" of Stem's claim for breach of contract, see Compl. ¶¶ 36–39, and thus the policy is properly incorporated. See Khoja, 899 F.3d at 1002 (citing United States v. Ritchie, 342 F.3d 903, 907–09 (9th Cir. 2003)).

[2] The Settlement Agreement is not attached to the Complaint, but the Court can take notice of it as it is incorporated by reference in the Complaint. See Khoja, 899 F.3d at 1002. The settlement of Reineccius's dispute "forms the basis" of Stem's claim that Scottsdale acted in bad faith. See id. Scottsdale contends that Reineccius's 2010 employment dispute is currently being litigated, see Scottsdale MTD at 8–9, while Stem alleges that such a contention is in bad faith, as Reineccius released Stem from those claims pursuant to the Settlement Agreement. See Compl. ¶¶ 29–30. Thus, the Settlement Agreement is properly incorporated. See Khoja, 899 F.3d at 1002. Although Stem introduced the Settlement Agreement, Scottsdale does not oppose its incorporation and

"arising from any omissions, acts, facts, or damages that have occurred up until and including the Effective Date of this Agreement."[3]  Stem Opp'n to Scottsdale MTD at 6; see also Settlement Agreement at 5–6 of 22.  Stem also issued shares to Reineccius and his attorneys, Richard Grimm and Gregory Klingsporn, as a result of the Settlement Agreement.  Scottsdale MTD at 3–4; see also Settlement Agreement at 3 of 22.

On October 17, 2014, Stem informed Scottsdale of a December 31, 2013, letter Stem received from Grimm, which requested information about a transaction at Stem known as the "Series B Financing" for the purpose of obtaining information necessary for litigation.  Compl. ¶ 19.  On January 23, 2015, Scottsdale replied and denied that there was a claim at that time, as no lawsuit had yet been filed.  See id. ¶ 20.  However, in the same reply, Scottsdale stated that it would "treat this matter as a notice of facts or circumstances which may reasonably give rise to a future **Claim**."  Id. (emphasis in original).

Over two years later, on May 12, 2017, Reineccius, Grimm, Klingsporn, and Brenda Berlin filed Stacey Reineccius, et al. v. Zeb Rice, et al., Case No. 17CIV02098 ("Underlying Lawsuit"), in the Superior Court of California for the County of San Mateo, naming three current and former members of Stem's Board of Directors as defendants: Zeb Rice, John Carrington, and David Buzby.[4]  See id. ¶¶ 21–22; see also Scottsdale MTD at 3.  The plaintiffs in the Underlying Lawsuit set forth three causes of action against Stem's directors: breach of fiduciary duty, conspiracy, and unjust enrichment.  Compl. ¶ 23; see also Scottsdale MTD at 4.  The complaint alleges that Stem failed to allow the plaintiffs to participate in financing opportunities, which diluted the plaintiffs' equity interests.  See Compl. ¶ 23; see also Scottsdale MTD at 4.  The Underlying Lawsuit also includes a separate allegation that Buzby engaged in self-dealing by earning a windfall from a short-term loan to Stem.  Compl. ¶ 24.

On June 2, 2017, Stem tendered the Underlying Lawsuit to Scottsdale.  Id. ¶ 26.  Scottsdale

---

refers to the Settlement Agreement in its briefing.  See Scottsdale MTD at 4, 10.
[3] The Settlement Agreement refers to Stem as Powergetics, Inc., its former name.  See Settlement Agreement at 1 of 22; see also Stem Opp'n to Scottsdale MTD at 6.
[4] Also named as defendants in the Underlying Lawsuit are two non-insured entities, Angeleno Group, LLC and GE Ventures, LLC.  Compl. ¶ 22 n.1; see also Scottsdale MTD at 4.

3

responded on July 27, 2017, by notifying Stem that there was no coverage available for the Underlying Lawsuit under either the 2013–2014 Policy or the 2016–2017 Policy. Id. Scottsdale limited its coverage analysis to the 2013–2014 Policy because the "Series B Financing," which Stem notified Scottsdale of in 2014 was the subject of the relevant litigation. See id. ¶ 27. Scottsdale's denial of coverage relied on the policy's Insured v. Insured Exclusion, because Reineccius was a former insured director of Stem. See id. ¶ 31. The Underlying Lawsuit is ongoing. Id. ¶ 50.

Stem filed this suit against Scottsdale, bringing claims for breach of contract and tortious breach of the implied covenant of good faith and fair dealing.[5] See generally id. Stem is seeking declaratory relief and punitive damages. See generally id. Scottsdale moves to dismiss Stem's complaint, contending that there is no potential for coverage. See Scottsdale MTD at 1.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court

---

[5] Stem asserts that this Court has subject-matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Compl. ¶¶ 1–2. Scottsdale does not challenge subject-matter jurisdiction.

4

may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

### III. DISCUSSION

A liability insurer owes a duty to defend when a suit brought against its insured seeks damages that potentially fall within the coverage of the policy. Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995). "Where there is no possibility of coverage, there is no duty to defend." Id. (internal quotation marks omitted). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." Montrose Chem. Corp. of Cal. v. Super. Ct., 6 Cal. 4th 287, 300 (1993) (emphasis in original). To determine whether an insurer owes a duty to defend, a court must "compar[e] the allegations of the complaint with the terms of the policy." Id. at 295.

Scottsdale contends that it does not have a duty to defend Stem in the Underlying Lawsuit for three reasons: (A) claims brought by former directors are excluded by the Insured v. Insured Exclusion in the policy; (B) claims seeking amounts owed to securities holders under a written or express contract or agreement do not fall within the definition of Loss covered by the policy; and (C) claims for unjust enrichment and punitive damages are also not included in the definition of Loss. Scottsdale also argues that (D) Stem fails to allege facts that support its claim for bad faith and request for punitive damages.

For the reasons set forth below, Scottsdale has failed to "establish the absence of any [] potential" for coverage based on its policy exclusions. See id. at 300. The Court also finds that Stem has alleged facts to support its claim for bad faith and request for punitive damages.

#### A. Insured v. Insured Exclusion

Scottsdale asserts that the Insured v. Insured Exclusion in Stem's policy precludes coverage for the Underlying Lawsuit. See Scottsdale MTD at 7. The exclusion bars suits "brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity . . . ." 2013–2014 Policy at 4 of 8 (emphasis in original). The parties do not dispute that

Reineccius, a plaintiff in the Underlying Lawsuit,[6] is a former director of Stem and thus falls under the definition of Insured.  See Compl. ¶ 31; see also Scottsdale MTD at 7.  However, Stem asserts that Reineccius's claims fall within an express exception to the Insured v. Insured Exclusion.  Stem Opp'n to Scottsdale MTD at 4.  Exception iv applies where a claim

> is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the **Company** . . .

2013–2014 Policy at 4 of 8 (emphasis in original).  The parties do not dispute that Reineccius brought the Underlying Lawsuit solely in his capacity as a shareholder of Stem nor that the Underlying Lawsuit was filed more than two years after Reineccius's termination in 2010.  See Stem Opp'n to Scottsdale MTD at 5; see also Scottsdale MTD at 8.

Thus, the dispute centers on whether the claims in the Underlying Lawsuit are "solely based upon and arising out of Wrongful Acts committed subsequent to the date" Reineccius ceased to be a member of Stem's Board of Directors: October 28, 2010.  See 2013–2014 Policy at 4 of 8; see also Stem Opp'n to Scottsdale MTD at 6.  As the insured, Stem bears the burden of proving an exception applies to an otherwise applicable policy exclusion.  See Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183, 1192 (1998), as modified on denial of reh'g (Oct. 14, 1998) ("[T]he insured must also prove that the exception affords coverage after an exclusion is triggered.").

The complaint in the Underlying Lawsuit alleges that "[s]ince 2010, the Defendants have employed various unlawful means to deprive Plaintiff Reineccius and his colleagues of the benefits of the company he created.  The wrongful acts and omissions described in this Complaint are part of Defendants' continuing campaign against the Plaintiffs."  RJN Ex. C (dkt. 15-3)

---

[6] Reineccius settled his claim and is no longer a plaintiff in the Underlying Lawsuit.  See Compl. ¶ 25.  However, this fact is immaterial, as the Underlying Lawsuit was nonetheless "brought by" Reineccius.  See Scottsdale MTD at 7.

6

("Underlying Complaint") ¶ 2.[7]  The Underlying Complaint goes on to describe various acts "aimed at removing" Reineccius from Stem in 2010.  See id. ¶¶ 28–34.  However, any claims that Reineccius might have had based on wrongful acts prior to March 28, 2011, were fully and finally resolved by the Settlement Agreement and thus cannot have been the basis of the claims he asserted six years later in the Underlying Lawsuit.  See Settlement Agreement at 5–6 of 22; see also Stem Opp'n to Scottsdale MTD at 6.

The plaintiffs in the Underlying Lawsuit, including Reineccius, suggest as much in their "Opposition to Petition to Compel Arbitration," stating that "Reineccius'[s] claims arising out of [the employment dispute] . . . were resolved by the Settlement Agreement and are not before this Court" and that "[t]his [l]itigation [a]rises [o]ut of [e]vents in 2013."  See Stem Opp'n to Scottsdale MTD Ex. B (dkt. 16-4) at 4 n.3, 5.[8]  This supports the conclusion that discussion of events that occurred in 2010 in the Underlying Complaint is merely intended to provide background.  See Stem Opp'n to Scottsdale MTD at 8.  The claims in the Underlying Lawsuit are based solely on alleged wrongful acts that occurred after Reineccius's termination in 2010 and fall under Exception iv to the Insured v. Insured Exclusion.

Alternatively, Stem argues that the allocation provision in the policy would also provide coverage for the claims of the three non-insured plaintiffs in the Underlying Lawsuit, even if the Insured v. Insured Exclusion applies.  See id. at 2–3.  Because the Insured v. Insured Exclusion does not apply to Reineccius's claims, the Court need not address this argument.

### B. Amounts Owed to Securities Holders Under a Contract

Scottsdale argues that the Underlying Lawsuit is not covered by its insurance policy because "any amounts owed or paid to one or more securities holders of the Company under any

---

[7] This complaint is referenced in Stem's Complaint and forms the basis of Stem's claims.  See Compl. ¶ 25.  Thus, it is properly incorporated.  See Khoja, 899 F.3d at 1002.

[8] The documents comprising the Underlying Lawsuit are matters of public record.  "'[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'"  Khoja, 899 F.3d at 999 (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).  However, "a court cannot take judicial notice of disputed facts contained in such public records."  Id.  Thus, the Court takes judicial notice of the fact that the plaintiffs made these representations in the Underlying Lawsuit, but not of the truth of those representations.  See Lee, 250 F.3d at 689–90.  Although the document was introduced by Stem, Scottsdale does not oppose judicial notice.

7

written or express contract or agreement" are specifically excluded from the definition of Loss. See Scottsdale MTD at 9–10; see also 2013–2014 Policy at 2 of 8.  Scottsdale contends that the plaintiffs in the Underlying Lawsuit are seeking "monies and shares" owed to them under the Settlement Agreement.[9]  Scottsdale MTD at 10.  Scottsdale also asserts that the plaintiffs are "seeking monies owed for defendants' alleged breach of the written agreement granting the plaintiffs shares in the Company."  Id.

While the insured "has the burden of establishing that his or her claim comes within 'the scope of basic coverage,'" the insurer "has the burden of establishing the applicability of an exclusion."  Prichard v. Liberty Mut. Ins. Co., 84 Cal. App. 4th 890, 910 (2000), as modified on denial of reh'g (Dec. 6, 2000) (citations omitted).  To prevail, Scottsdale must establish the absence of any potential for coverage based on this exclusion.  See Montrose, 6 Cal. 4th at 300.  Scottsdale has not met this burden with respect to the contract exclusion in the definition of Loss.

Although the plaintiffs in the Underlying Lawsuit assert only tort claims and do not allege a claim for breach of contract, see generally Underlying Complaint, that fact is not dispositive.  See Barnett v. Fireman's Fund Ins. Co., 90 Cal. App. 4th 500, 510 (2001) (finding a potential for coverage for defamation even though the underlying action did not allege all of the elements of that cause of action).  Instead, courts must look to "the facts alleged in the underlying complaint . . . regardless of the technical legal cause of action pleaded by the third party" to determine whether coverage exists.  Id. (citations omitted).

Under the Settlement Agreement, Stem agreed "to issue stock certificates representing ownership in those shares as follows: Reineccius, 3,528,667 shares; Richard Grimm . . . 882,167 shares; Gregory Klingsporn . . . 441,083 shares."  Settlement Agreement at 3 of 22.  No one alleges that Stem failed to issue those shares to those individuals.  The fourth plaintiff in the Underlying Lawsuit, Brenda Berlin, did not receive shares as a result of the Settlement Agreement and acquired them through another method not described in the Underlying Complaint.

The plaintiffs in the Underlying Lawsuit allege that their "equity in STEM was reduced . . .

---

[9] Scottsdale refers to the Settlement Agreement as the "Severance Agreement" in its briefing.  See Scottsdale MTD at 4.

on a fully diluted basis" while "the Defendants' combined equity in STEM increased." See Underlying Complaint ¶ 5. The Underlying Complaint outlines a series of financing transactions undertaken by Stem, which the plaintiffs were ostensibly not permitted to participate in, that allowed other investors to purchase billions of shares of stock at discounted prices and exchange eligible individual shares for one hundred shares, thereby diluting the plaintiffs' holdings. See id. ¶¶ 42–56. Among other remedies, the Underlying Complaint requests "[a]n injunction requiring the Board to issue to the Plaintiffs a sufficient number of shares of STEM's common and/or preferred stock, as appropriate, to fully offset the adverse consequences of the Defendants' unlawful acts and omissions." Id. ¶ D. The Underlying Complaint does not request the return of the original shares and, presumably, the plaintiffs remain in possession of those now-diluted shares.

The plaintiffs in the Underlying Lawsuit are not seeking amounts owed under a written contract or agreement. The only amounts owed under the Settlement Agreement, which does not apply to Berlin anyway, are the shares of stock that Stem already issued. See Settlement Agreement at 3 of 22. That the value of the shares is considerably lower than it once was, allegedly due to Stem's breach of fiduciary duty, does not alter the fact that the plaintiffs received what Stem owed them under the agreement: the shares themselves. The Settlement Agreement, or any other written agreement under which Stem owed shares to the plaintiffs in the Underlying Lawsuit, was not breached even if Stem's fiduciary duty was.

The case that Scottsdale cites in support of its position that the Underlying Lawsuit does not fall within the definition of covered Loss, Medill v. Westport Insurance Corp., 143 Cal. App. 4th 819 (2006), has significantly different facts. See Scottsdale MTD at 10; see also Scottsdale Reply ISO MTD (dkt. 17) at 4. In Medill, the insured entered into loan agreements that required it to repay bonds and subsequently defaulted on those obligations. See 143 Cal. App. 4th at 824. Although the plaintiffs in the underlying litigation in that case asserted only tort claims, they were seeking damages resulting from the failure of the insured "to perform their contractual obligations." See id. at 829. Further, the definition of loss in the insurance policy at issue specifically excluded "damages 'arising out of' breach of any contract." Id. (emphasis added).

Here, Stem did not breach any agreements with the plaintiffs in the Underlying Lawsuit. No one has asserted that Stem failed to perform their contractual obligation to issue shares to the plaintiffs. See Settlement Agreement at 3 of 22. And Scottsdale's contract exclusion notably does not include the phrase "arising out of," which was important to the decision in Medill. See 143 Cal. App. 4th at 830. Instead, it limits claims for "amounts owed or paid . . . under any written or express contract or agreement." See 2013–2014 Policy at 2 of 8 (emphasis added). The policy at issue in Medill broadly defined "arising out of" as "based upon, arising out of, or in connection with." 143 Cal. App. 4th at 830. "California courts have consistently given a broad interpretation" to "arising out of" language in insurance policies, so that it "connotes only a minimal causal connection or incidental relationship." Id. (internal quotations omitted). Scottsdale's policy language is more narrowly construed, so that only amounts owed as a direct result of a written agreement are excluded.

Accordingly, the Court finds that Scottsdale has not established the absence of any potential for coverage and, therefore has not met its burden with respect to the contract exclusion in the definition of Loss. See Montrose, 6 Cal. 4th at 300.

### C. Claims for Unjust Enrichment and Punitive Damages

Scottsdale also argues that the Underlying Lawsuit is not covered because the plaintiffs in the Underlying Lawsuit "are seeking the return of their equity in Stem, which is uninsurable as a matter of law." Scottsdale MTD at 10. In support of this proposition, Scottsdale focuses on the plaintiffs' unjust enrichment claim and requested remedy of shares of Stem's stock. See id. at 10–11; see also Scottsdale Reply ISO MTD at 2–3; Underlying Complaint ¶¶ 112–17, D. Stem argues that focusing only on these components of the Underlying Lawsuit "ignores the full panoply of financial risks" Stem faces as a result of other claims, including breach of fiduciary duty and conspiracy. See Stem Opp'n to Scottsdale MTD at 11; see also Underlying Complaint ¶¶ 94–99, 106–11.

The definition of Loss in the insurance policy specifically excludes "matters uninsurable under the laws pursuant to which this **Policy** is construed" and "punitive or exemplary damages." 2013–2014 Policy at 2 of 8 (emphasis in original). Because this is a policy exclusion, Scottsdale

bears the burden of establishing the absence of any potential for coverage. See Prichard, 84 Cal. App. 4th at 910; see also Montrose, 6 Cal. 4th at 300. While Scottsdale has established that some categories of damages sought in the Underlying Lawsuit are excluded from coverage, the Court finds that it has not established the absence of <u>any</u> potential for coverage.

The California Supreme Court has noted "that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies." Bank of the W. v. Super. Ct., 2 Cal. 4th 1254, 1266 (1992) (citations omitted). In so holding, the Court rejected reliance on labels including "damages" and "restitution" and instead concluded that coverage is barred "in 'situations in which <u>the defendant is required to restore to the plaintiff that which was wrongfully acquired</u>.'" See id. at 1270 (quoting Jaffe v. Cranford Ins. Co., 168 Cal. App. 3d 930, 935 (1985)) (emphasis in original).

Although unjust enrichment clearly describes a claim that would compel the defendant to restore to the plaintiff that which was wrongfully acquired, Stem argues that another exclusion in Scottsdale's policy provides for a defense against such claims. See Stem Opp'n to Scottsdale MTD at 12–13. The policy prohibits coverage for claims involving "the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion . . . shall not apply unless and until there is a final judgment against such **Directors and Officers** as to such conduct." 2013–2014 Policy at 4 of 8 (emphasis in original). Stem argues that because this exclusion is inapplicable absent a final judgment, Stem is entitled to a defense against a claim of unjust enrichment. See Stem Opp'n to Scottsdale MTD at 13.

However, policy exclusions cannot create coverage. See Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 626 (9th Cir. 1996) ("It is well established in California that an exclusion cannot act as an additional grant or extension of coverage.") (citations omitted); see also Ray v. Valley Forge Ins. Co., 77 Cal. App. 4th 1039, 1048 (1999) ("Insurance policy exclusions do not create coverage."). Scottsdale asserts that this exclusion is in the policy because "[s]ome jurisdictions may permit insurance coverage for claims of unjust enrichment." Scottsdale Reply

11

ISO MTD at 3.  Because California prohibits insurance coverage for claims of this type, this exclusion cannot create coverage for a matter uninsurable under California law.

The punitive damages requested by the plaintiffs in the Underlying Lawsuit, see Underlying Complaint ¶ E, are not insurable either.  Scottsdale's insurance policy clearly excludes punitive damages from its definition of Loss.  2013–2014 Policy at 2 of 8.  Punitive damages are also not insurable under California law.  See PPG Indus., Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310, 319 (1999) ("[A]n insured may not shift to its insurance company . . . the payment of punitive damages awarded in the third party lawsuit.").

Despite the exclusion of some elements of the Underlying Lawsuit from insurance coverage, Scottsdale has failed to establish the absence of any potential for coverage.  See Montrose, 6 Cal. 4th at 300.  As Stem points out, it still faces losses other than those related to unjust enrichment and punitive damages, including plaintiffs' attorneys' fees and expenses, plaintiffs' costs, and damages related to the other two claims for breach of fiduciary duty and conspiracy.  See Stem Opp'n to Scottsdale MTD at 12.  Scottsdale has not pointed to any specific exclusion in its policy or provision of California law barring insurance coverage for these potential losses.

Scottsdale instead argues that Stem's other potential claims are "intertwined" with the disgorgement claim and are therefore not insurable "because when one claim is intertwined with a noncovered claim, there is no coverage for either claim."  Scottsdale Reply ISO MTD at 3 (citing Marie Y. v. Gen. Star Indem. Co., 110 Cal. App. 4th 928 (2003)).  However, Marie Y. is inapposite.  See Stem Proposed Sur-Reply in Opp'n To Scottsdale MTD (dkt. 18-2) at 1.[10]  Marie Y. involved an insurance company's refusal to defend or indemnify its insured dentist in an action for damages for sexual misconduct.  See 110 Cal. App. 4th at 933.  The court in that case held that the dental assistants' negligent failure to protect the patient was so "inextricably intertwined" with the dentist's intentional conduct and the patient's resulting harm that it was insufficient to trigger the insurer's duty to indemnify.  See id. at 957.  This case does not hold (and Scottsdale does not

---

[10]  The Court GRANTS Stem leave to file its proposed Sur-Reply because Scottsdale made the "intertwinement" argument for the first time in its Reply.  See Scottsdale Reply ISO MTD at 3.

cite any other case which does) that an uninsurable disgorgement claim in an underlying complaint bars coverage for the entire action.

Unified Western Grocers, Inc. v. Twin City Fire Insurance Co., 457 F.3d 1106 (9th Cir. 2006), is informative. In that case, the underlying complaint sought restitution of an ill-gotten gain, which was an uncovered loss under California law, and compensation for other covered loss caused by the insured's wrongful actions. See id. at 1114–15. The Ninth Circuit held that "[w]hen an underlying complaint contains a mixture of covered and uncovered loss, the insurer is obligated to allocate the reimbursement of funds between the two types." Id. at 1115.

As in Unified Western Grocers, Scottsdale is obligated to allocate the reimbursement of funds between Stem's uncovered losses, including those related to the unjust enrichment claim and punitive damages, and the covered losses. See id. Scottsdale's own policy includes an allocation provision that dictates how such reimbursements will be made when a claim "includes both covered and uncovered matters." See 2013–2014 Policy § O. As in Unified Western Grocers, "[a] genuine issue of material fact remains as to the extent that the Underlying Complaint sought restitution of money wrongfully acquired," but this does not extinguish the potential for coverage for other loss from the Underlying Lawsuit. See 457 F.3d at 1115–16. Scottsdale has therefore failed to establish the absence of any potential for coverage. See Montrose, 6 Cal. 4th at 300.

### D. Stem's Claim of Bad Faith and Request for Punitive Damages

Finally, Scottsdale argues that Stem failed to allege facts that support its claim of bad faith and request for punitive damages. See Scottsdale MTD at 11–12. The essential elements of a cause of action for bad faith are: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." See Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990). The first element is satisfied by the potential for coverage discussed above.

Scottsdale contends that because a genuine legal dispute exists as to the interpretation of the contract, their denial of the claim was not unreasonable. See Scottsdale MTD at 11–12. In support of this proposition, Scottsdale relies on Chateau Chamberay Homeowners Ass'n v.

13

Associated International Insurance Co., 90 Cal. App. 4th 335 (2001). See Scottsdale MTD at 12. However, this case is inapposite, as it is a first-party property insurance case not involving an insurer's defense obligation. See 90 Cal. App. 4th at 339–44. The only case Scottsdale cites involving a duty to defend, Scottsdale Insurance Co v. MV Transportation, 36 Cal. 4th 643 (2005), is also inapposite. In that case, the court held that an insurer properly reserved its right to reimbursement after defending its insured based on an ultimate determination that the policy never afforded any potential for coverage. See id. at 649. Therefore, the presence of a genuine legal dispute is not dispositive of Stem's bad faith claim.

Further, Stem does allege that Scottsdale deliberately ignored or failed to investigate key factual issues in the Underlying Lawsuit, specifically that three of the plaintiffs are non-insureds, that the Settlement Agreement fully resolved Reineccius's employment dispute, that the plaintiffs do not base any of their claims on any contract, and that the plaintiffs' requested damages are not limited to disgorgement. See Stem Opp'n to Scottsdale MTD at 15. Insurers are obligated to investigate the circumstances of a claim before denying coverage. See Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co., 302 F.3d 1049, 1054–55 (9th Cir. 2002) ("[A]n insurer must undertake a reasonable investigation into the circumstances of the claim before denying coverage.") (citations omitted). Stem's claim that "Scottsdale intentionally disclaimed a defense obligation despite knowledge of its coverage obligations, and acted with an intent to enrich itself while injuring and harming Stem," Compl. ¶ 48, taken as true, satisfies the "unreasonable" element of a bad faith claim.

The California Civil Code also allows punitive damages when the defendant is "guilty of oppression, fraud, or malice." Cal. Civ. Code. § 3294(a). "Under the federal pleading standards, a plaintiff may rely on conclusory averments of malice or fraudulent intent to plead the mental state required by § 3294." Align Tech., Inc. v. Fed. Ins. Co., 673 F. Supp. 2d 957, 965 (N.D. Cal. 2009) (citing Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000)). In Align, Judge Whyte agreed with the court in Clark to conclude that allegations of intentional denial of an insurance claim despite knowledge of coverage obligations and an intent to injure the insured are sufficient to support a prayer for punitive damages. See id. at 965–66. Because Stem makes the

1  same allegations in this case, see Compl. ¶ 48, Stem's request for punitive damages is adequately
2  pled.

3  **IV.     CONCLUSION**

4  For the foregoing reasons, the Court DENIES Scottsdale's motion to dismiss.

5  **IT IS SO ORDERED.**

6  Dated: July 20, 2020



7  CHARLES R. BREYER
   United States District Judge