**COZEN O'CONNOR**
Valerie D. Rojas, State Bar No. 180041
*vrojas@cozen.com*
Angel Marti, III, State Bar No. 305300
*amarti@cozen.com*
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7965
Facsimile: 213.784.9076

Attorneys for Defendant
SCOTTSDALE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| STEM, INC., | Case No.: 3:20-cv-02950-CRB |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT SCOTTSDALE INSURANCE COMPANY'S REPLY TO PLAINTIFF STEM, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation; and DOES 1 through 20, inclusive, | |
| Defendants. | |
| | **Date:** April 29, 2021<br>**Time:** 10:00 a.m.<br>**Courtroom:** 4 |

Defendant Scottsdale Insurance Company ("Scottsdale") hereby submits the following Memorandum of Points and Authorities in support of its Reply to plaintiff Stem, Inc.'s opposition to Scottsdale's motion for summary judgment, or in the alternative, partial summary judgment ("Motion").

# **TABLE CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

II.  LEGAL ARGUMENT ................................................................................... 2

A.  The Underlying Action and the 2010 Claim Constitute One Claim First Made Before the Policy Incepted ................................................................................ 2

B.  The Prior or Pending Litigation Exclusion Bars Coverage .............................. 7

C.  The Prior Knowledge Exclusion Bars Coverage ............................................ 10

D.  Stem Breached the Application and Warranty Conditions ............................ 11

E.  There is No Potential for Coverage for the Claim Against Buzby ................. 12

F.  The Insured versus Insured Exclusion Bars Coverage .................................... 13

G.  Plaintiff Failed To Prove Its Claim For Bad Faith .......................................... 13

H.  Plaintiff Failed To Prove Its Claim For *Brandt* Fees ...................................... 14

I.  Stem Failed To Prove Its Claim For Punitive Damages ................................. 14

III. CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amadeo v. Principal Mut. Life Ins. Co.*,
    290 F.3d 1152 (9th Cir. 2001) ........................................................................... 15

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*,
    5 Cal.4th 854 (1993) ............................................................................... 5, 6, 8

*Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v.
    Doctors Med. Ctr. of Modesto*,
    351 Fed.Appx. 175 (9th Cir. 2009) ..................................................................... 11

*Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v.
    Doctors Med. Ctr. of Modesto, Inc.*,
    No. C-07-1740EMC, 2007 WL 2385097 (N.D. Cal. Aug. 17, 2007) .................. 11

*Cassim v. Allstate Ins. Co.*,
    33 Cal. 4th 780 (2004) ...................................................................................... 14

*Certain Interested Underwriters at Lloyd's, London v. Bear, LLC*,
    796 Fed.Appx.372 (9th Cir. 2019) ...................................................................... 13

*Church Mutual Ins. Co. v. United States Liability Ins. Co.*,
    347 F.Supp.2d 880 (S.D.Cal. 2004) ..................................................................... 8

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*,
    supra, 254 F.3d at 888 ................................................................................ 3, 13

*Continental Cas. Co. v. City of Richmond*,
    763 F.2d 1076 (9th Cir.1985) ............................................................................... 9

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*,
    959 F.Supp. 1213 (C.D. Cal. 1997) .................................................................... 10

*Coregis Insurance Co. v. Camico Mutual Insurance Co.*,
    supra, 959 F.Supp. 1222 (C.D. Cal. 1997) ......................................................... 11

*Emmis Communic'ns Corp. v. Illinois National Insurance Co.*,
    323 F.Supp.3d 1012 (S.D. Ind. 2018) .............................................................. 8, 9

*Emmis Communications Corporation v. Illinois National Insurance Company*
 (7th Cir., 2019) .................................................................................................. 8

*Fed. Ins. Co. v. Raytheon Co.*,
 426 F.3d 491 (1st Cir. 2005) ........................................................................ 5, 10

*Gunderson v. Fire Ins. Exch.*,
 37 Cal.App.4th 1106 (1995) ............................................................................ 14

*Hilb Rogal & Hobbs Ins. Servs. of Cal., Inc. v. Indian Harbor Ins. Co.*,
 379 Fed. Appx. 609 (9th Cir. 2010) ................................................................... 3

*HR Acquisition I Corp. v. Twin City Fire Insurance Co.*,
 547 F.3d 1309 (11th Cir., 2008) ...................................................................... 10

*Juszkiewicz v. Federal Ins. Co.*,
 supra, 1998 WL 476263 .................................................................................... 9

*McMillin Companies, LLC v. American Safety Indemnity Co.*,
 233 Cal.App.4th 518 (2015) ............................................................................ 13

*McRory v. Catlin Specialty Insurance Company*,
 2011 WL 13137576 (W.D. Wa. 2011) ............................................................ 13

*Medill v. Westport Insurance Co.*,
 143 Cal.App.4th 819 (2006) .............................................................................. 8

*Minkler v. Safeco Ins. Co. of America*,
 49 Cal.4th 315 (Cal. 2010) .............................................................................. 10

*ML Direct, Inc. v. TIG Specialty Ins. Co.*,
 79 Cal.App.4th 137 (Ct. App. 2000) .............................................................. 4, 9

*Olson v. Federal Ins. Co.*,
 219 Cal.App.3d 252 (1990) ............................................................................. 13

*Patrick v. Maryland Casualty Co.*,
 217 Cal.App.3d. 1566 (1990) .......................................................................... 15

*Phoenix Ins. Co. v. Sukut Constr. Co.*,
 136 Cal.App.3d 673 (Cal.Ct.App. 1982) ......................................................... 11

*Property I.D. Corp. v. Greenwich Ins. Co.*,
 377 Fed.Appx. 648, 2010 WL 1646017 (9th Cir. 2010) ................................... 9

*Republic Bag, Inc. v. Beazley Insurance Company*,
    804 Fed. Appx.451 (9th Cir. 2020) ............................................................................... 7

*RSUI Indemnity Company v. Worldwide Wagering, Inc.*,
    2017 WL 3023748 (N.D. Ill 2017) ................................................................................ 9

*San Diego Unified Port District v. ACE American Insurance Company*,
    2015 WL 12496546 (S.D. Cal. 2015) ........................................................................... 8

*Slottow v. Am Casualty Co.*,
    10 F.3d 1355 (9th Cir. 1993) ...................................................................................... 14

*Smith Kandal Real Estate v. Continental Casualty Co.*,
    67 Cal.App.4th 406, 79 Cal.Rptr.2d 52 (1998) ............................................................ 9

*Tibbs v. Great American Ins. Co.*,
    755 F.3d 1370 (9th Cir. 1985) .................................................................................... 15

*United States v. Smith*,
    supra, 389 F.3d at 949 ........................................................................................... 3, 13

*Westinghouse Digital v. Scottsdale Insurance Company*,
    2014 WL 12573376 (C.D. Cal. 2014) .............................................................. 5, 10, 11

*Zunenshine v. Exec. Risk Indem., Inc.*,
    1998 WL 483475 (S.D.N.Y. 1998) ......................................................................... 5, 10

**Statutes**

Wrongful Act .................................................................................................................. 4, 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Stem, Inc. ("Stem") opposes Defendant Scottsdale Insurance Company's ("Scottsdale") motion for summary judgment based upon its contention that a lawsuit entitled *Reineccius, et al. v. Rice, et. al.*, filed against its directors ("Underlying Action") is not related to the 2010 dispute and 2011 Arbitration between the parties because the parties entered into a settlement agreement in 2011 ("2011 Settlement Agreement"), and this Court previously ruled that the Underlying Action must therefore be based "soley upon" wrongful acts that occurred after the 2011 Settlement.

As an initial matter, the law-of-the-case doctrine does not preclude the Court from reconsidering an issue it previously addressed. *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001); *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004). Moreover, simply because the parties have entered into a settlement agreement this does not mean that subsequent litigation cannot involve the same claims. It is not uncommon for parties to litigate claims one party believes have been release in a settlement agreement, and that is exactly what happened in the Underlying Action. The complaints and other pleadings, including a motion for summary judgment and the 2019 settlement agreements, demonstrate that the parties litigated the 2010 Claim and 2011 Settlement in the Underlying Action.

Because the Underlying Action and 2010 Claim allege Interrelated Wrongful Acts, they are deemed to be one Claim first made before Scottsdale issued a Policy to Stem. For the same reasons, coverage is barred by the Interrelated Wrongful Acts exclusion and Prior and Pending litigation exclusion. The Prior Knowledge exclusion also bars coverage given Stem's knowledge of Wrongful Acts that occurred prior to the Policy being issued which would, and did, give rise to the Claim.

Stem alleges that it accurately answered a question in its Application because it erroneously asserts that no letters between the Insureds threatened litigation. Contrary to Stem's assertion, there are a number of letters between the parties in which they threaten

litigation explicitly and implicitly. Stem then asserts that Scottsdale's remedies are "limited" based upon its misinterpretation of the word Application, which is defined to include "any" and "all" Applications such that Stem's initial Application to Scottsdale cannot be disregarded as Stem contends.

Stem further alleges exception iv. to the Insured versus Insured Exclusion ("IvI") applies because the Court denied Scottsdale's motion to dismiss on this issue, but again, the evidence shows that Underlying Action was not "solely" based upon and arising out of Wrongful Acts committed subsequent to the date Reineccius ceased to be a director.

Although Stem alleges that Buzby's personal loan to Stem is not related to the allegations concerning the 2017 financing (ignoring the 2013 and 2019 finncing), the allegations in the Underlying Action make it clear that the Buzby loan was one of the "various transactions" used to deprive Plaintiffs of their equity and unjustly enrich the board members.  Although Stem asserts that the Buzby loan constituted an alleged breach of his fiduciary duties as a board member, Stem cannot credibly dispute that Buzby's loan was not made "solely" in his capacity as a director as even he admits it was made in his personal capacity.

Finally, Stem cannot point to any evidence that proves that Scottsdale acted in bad faith or that Stem is entitled to punitive damages.  The purported evidence Stem cites to in support of its *Brandt* fee claim is insufficient and does not excuse Stem's failure to comply with disclosure and discovery obligations to identify its alleged damages.

## II.     LEGAL ARGUMENT

### A.     The Underlying Action and the 2010 Claim Constitute One Claim First Made Before the Policy Incepted

Stem contends that the Underlying Action does not arise out of or involve the 2010 Claim, that the Court already ruled on this issue, and that Scottsdale presents no new evidence to warrant departure from this Court's prior ruling.  Stem alleges that this Court's ruling on Scottsdale's motion to dismiss based upon the IvI exclusion is the "law of the case" with respect to whether the Underlying Action and 2010 Claim alleged

Interrelated Wrongful Acts and constitute one Claim first made before the Policy. First, as noted above, the law-of-the-case doctrine "simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, supra, 254 F.3d at 888; *United States v. Smith*, supra, 389 F.3d at 949.

Second, Stem's erroneous attempt to conflate the IvI exclusion with the definition of Interrelated Wrongful Acts ignores the plain language of the Policy. The phrase "based solely" does not appear anywhere in the definition of Interrelated Wrongful Acts or the provision deeming Claims alleging Interrelated Wrongful Acts to be one Claim. Interrelated Wrongful Acts is defined as "all Wrongful Acts that have as a common nexus *any* fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes." Further, an exclusion is interpreted narrowly whereas the definition of Interrelated Wrongful Acts is interpreted broadly. *Hilb Rogal & Hobbs Ins. Servs. of Cal., Inc. v. Indian Harbor Ins. Co.*, 379 Fed. Appx. 609, 611 (9th Cir. 2010) ("arising out of" means "having a connection with."). Stem bears the burden of establishing that its Claim was first made during the Policy period, but it has not.

Assuming *arguendo* that the Underlying Action is "based solely" upon wrongful acts that occurred after the 2011 Settlement (it is not), the Underlying Action still alleges wrongful acts that are interrelated with the wrongful acts alleged in the 2010 Claim and therefore, they constitute one Claim under the Policy. It is immaterial that plaintiffs alleged in their opposition to the motion to compel arbitration that the 2010 "employment dispute" and the RSPAs were resolved by the 2011 Settlement (in an effort to avoid arbitration) because the Underlying Action and the 2010 Claim both have a common nexus of facts, circumstances, situations, events, transactions, series of facts, circumstances events, and transactions.

Third, contrary to Stem's assertion, Scottsdale submitted substantial evidence demonstrating that the 2010 Claim was litigated in the Underlying Action. Stem simply disagrees with the implication of the evidence Scottsdale submitted. Stem admits that Rice (and Angeleno Group) moved for summary judgment on the 2010 Claim in the Underlying Action based upon the same argument that Stem advances here, that the 2010 Claim was resolved in the 2011 Settlement. Stem dismisses Rice's motion by arguing exactly what Rice did in his motion – that the 2010 Claim was resolved in the 2011 Settlement. However, Rice's motion proves the point that the parties were litigating the 2010 Claim in the Underlying Action and did not view Plaintiffs' contentions concerning the 2010 Claim as mere "background information."

Scottsdale also submitted the 2019 Settlement Agreements, but Stem dismisses the release language asserting that it was included because Stem "wished permanently to part company with Mr. Reineccius, and sought to ensure broad release language, . . ., that he would never try and resurrect past grievances, including his 2010 Employment Dispute" - because that is exactly what Plaintiffs did in the Underlying Action. If the parties believed that the 2010 Claim was unrelated, Plaintiffs would not have included allegations about the 2010 Claim in their complaints, the court would not have analyzed the 2011 Settlement Agreement when compelling arbitration, defendants would not have moved for summary judgment on the 2010 Claim and the defendants would not have included the broad 2019 releases.

In addition, coverage for the Underlying Action is barred by the Interrelated Wrongful Acts Exclusion which excludes coverage for Loss "on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or *in any way* involving any Wrongful Act actually or allegedly committed prior to [October 13, 2011], or any Wrongful Act occurring on or subsequent to [October 13, 2011], which, together with a Wrongful Act occurring prior to such date, would constitute Interrelated Wrongful Acts." Ex. A, Section D.3., p. 6 of 8; *ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal.App.4th 137 (Ct. App. 2000) ("arising out of" is

not ambiguous); *Fed. Ins. Co. v. Raytheon Co.,* 426 F.3d 491, 500 (1st Cir. 2005). "Nothing in the policy requires that a claim involve precisely the same parties, legal theories, wrongful acts or request for relief." *Zunenshine v. Exec. Risk Indem., Inc.*, 1998 WL 483475, at *5 (S.D.N.Y. 1998); see also, *Westinghouse Digital v. Scottsdale Insurance Company*, 2014 WL 12573376, * 11 (C.D. Cal. 2014).

In its motion, Stem attempted to carve out separate Claims in the Underlying Action in an effort to trigger a duty to defend based upon the Buzby loan. Stem alleged that the Underlying Action includes two Claims, with one being a claim based upon the 2013 Series B Financing and the second being a claim based upon Buzby's loan to Stem. Stem fails to recognize that by its own logic the Underlying Action would involve four Claims as it includes allegations arising from a 2013 financing, 2017 financing, 2019 financing and the Buzby loan. This may be why Stem does not appear to make this same argument in its opposition to Scottsdale's motion.

Stem makes the conclusory statement that the 2010 Claim and Underlying Action are "temporally, logically and causally" distinct. In contrast, Plaintiffs in the Underlying Action allege that the ongoing scheme to deprive Reineccius and the other Plaintiffs of their shares in the company started in 2010 with Reineccius wrongful termination, Defendants moved for summary judgment on the application of the release in the 2011 Settlement Agreement, and the 2019 settlement agreements release the ongoing dispute between the parties including the 2010 Claim and 2011 Settlement Agreement. Accordingly, the Underlying Action arises out of the same alleged Wrongful Acts as alleged in the 2010 Claim.

Stem cites only to one case in support of its contention that the Underlying Action is separate from the 2010 Claim, but the case Stem relies upon does not support Stem's position. Stem relies upon *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 860-861 (1993), which involved a lawsuit by a client against his attorney based upon two different errors the attorney made in connection with a debt collection. The court held that the attorney's two omissions constituted a single claim

under the policy. The court further held that, even assuming that the two omissions resulted in separate claims, they were subject to the policy provision requiring that claims arising out of a single act or a series related acts be treated as a single claim. The court held that the attorney's two errors were "related" in that they arose out of the same transaction, arose as to the same client, were committed by the same attorney, and resulted in the same injury, loss of the debt. *Id*. at 861. First, the definition of Claim in the *Bay Cities*' policy is different than the Scottsdale Policy, but even so, the holding in *Bay Cities* supports Scottsdale's position that the Underlying Action is a single Claim that alleges the same Interrelated Wrongful Acts as alleged in the 2010 Dispute. The court in Bay Cities found that a lawsuit alleging two different omissions constituted a single Claim and even if it alleged two claims, they were related and therefore, deemed to be one claim. *Id*.

Second, the court pointed out that under Bay Cities' view, "the greater the number of an attorney's negligent acts, the greater the number of claims under the policy, even if all the acts cause only a single injury." *Id*. at 861. Similarly, here, the greater number of acts or financing transactions the directors performed to dilute the Plaintiffs' equity in Stem while profiting themselves, the greater number of claims. By Stem's logic, it is asking this Court to find that the Underlying Action consists of four Claims and write-out the definition of Interrelated Wrongful Acts as well as the Condition deeming Claims alleging Interrelated Wrongful Acts to be one Claim. Such a result is not supported by the holding in *Bay Cities*.

The allegations in the 2010 Claim and the Underlying Action, including allegations related to the Buzby Loan, the 2013 financing, the 2017 financing and the 2019 financing have in common the same facts concerning Stem's efforts to "permanently part company" with Reineccius and dilute the Plaintiffs' equity in Stem, the same board members and shareholders, the same allegations of a scheme of transactions designed to dilute Plaintiffs' equity in Stem, all arise from Reineccius' termination, the 2011 arbitration and 2011 Settlement resulting in Plaintiffs becoming

shareholders. But for the 2011 Settlement, the Plaintiffs would not have become shareholders in Stem. The same circumstances and series of facts starting with Reineccius termination and Plaintiffs becoming shareholders as a result, give rise to all events and transactions alleged in the Underlying Action. (Ex. EE, paras. 76-71, 73-79; Ex. FF, paras. 67-71, 73-79).

### B. The Prior or Pending Litigation Exclusion Bars Coverage

Stem alleges that the Prior and Pending Litigation Exclusion does not apply because it "does not square with the Court's July 20, 2020 Order." Stem offers no other explanation refuting the application of the Prior and Pending Litigation Exclusion. Stem ignores the evidence from the Underlying Action that the court did not have before it in ruling on the motion to dismiss, including the order compelling arbitration, the motion for summary judgment on the application of the 2011 Settlement Agreement in the Underlying Action, and the 2019 settlement agreements, all of which demonstrate that the parties litigated the 2010 Dispute despite the 2011 Settlement Agreement.

The Prior or Pending Litigation Exclusion excludes coverage for Loss on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving: (i) any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry filed or pending on or before the Continuity Date; or (ii) any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry. Ex. A, Section C.1.k., p. 5 of 8.

Stem cites to *Republic Bag, Inc. v. Beazley Insurance Company*, 804 Fed. Appx.451, 453 (9th Cir. 2020) in which the Court refused to apply the Prior and Pending Litigation exclusion in a motion to dismiss "at this stage", but the case does not specify the factual allegations in the two lawsuits in order to evaluate the application of the exclusion so it is not helpful or on point.

Stem also relies upon *Church Mutual Ins. Co. v. United States Liability Ins. Co.*, 347 F.Supp.2d 880, 890 (S.D.Cal. 2004).  However, the policy in *Church Mutual*, is different than the Policy at issue here.  In *Church Mutual* the third party recorded a mechanic's lien for the amounts owed by the insured, and later filed a lawsuit alleging claims for breach of contract and fraud.  The insurer argued that the filing and recording of the mechanic's lien constitutes a pending prior claim or demand and that the prior and pending litigation exclusion precludes coverage for the fraud causes of action because all of the claims and damages in the underlying action flow from the insured's failure to pay for the work. *Id*. at 879.  The court disagreed and pointed out that the allegations that the insured defrauded the third party into reducing its billing statements by falsely claiming that the third party's work was unsatisfactory, and that the insured stole the core of the third party's business and all of its employees, were not related to the insured's failure to pay amounts owed under contract.  *Id*.  However, the court in *Medill v. Westport Insurance Co.*, 143 Cal.App.4th 819,  (2006) distinguished *Church Mutual* and disagreed that the exclusionary language was ambiguous.  The court in *Medill* held that the tort claims against the D&Os "arise out of" and would not exist except for the failure to pay contractual obligations and were therefore, also excluded from coverage.  *Id*. at 831 ("The proper question is whether the [provision or] word is ambiguous in the context of this policy and the circumstances of this case. [Citation.]").  Without the 2010 Claim and resulting 2011 Settlement Agreement, Plaintiffs would not be shareholders in Stem and the Underlying Action would not exist.  *San Diego Unified Port District v. ACE American Insurance Company*, 2015 WL 12496546, * 5 (S.D. Cal. 2015) (claim arises out of prior litigation because "very existence of Phelps' claim against the Port depends on the Mandate Litigation.").

Stem cites to *Emmis Communic'ns Corp. v. Illinois National Insurance Co.*, 323 F.Supp.3d 1012, 1027 (S.D. Ind. 2018) aff'd without opinion, *Emmis Communications Corporation v. Illinois National Insurance Company*, (7th Cir., 2019) for the proposition that the exclusion must be read narrowly to exclude only those claims "that share the

same operative facts with the [prior proceeding]. . ." See, Opp. 7:16-20.  However, the court in that case was concerned that finding in favor of the insurer might precipitate exclusions from coverage, where the underlying suit did something as simple as allege "that [the Claimant was] a publicly-traded corporation, or even simply that [it did] business in Indiana." *Emmis Commc'ns Corp.*, 323 F.Supp.3d at 1026.  These are not the type of basic facts that render the 2010 Claim and the Underlying Action related here, and therefore *Emmis Commc'ns* is distinguishable.

It is immaterial that Stem contends the 2010 Claim was resolved in the 2011 Settlement Agreement because the Policy and pleadings in the Underlying Action demonstrate that the exclusion applies as the pleadings show that the Underlying Action arises out of the 2010 Claim.  "[T]o fall within the exclusion provision, each allegation and each fact need not arise from or connect directly to the [prior claim]. Instead, the claims in the Underlying Litigation only need to arise out of the [prior claim] *in part*." *RSUI Indemnity Company v. Worldwide Wagering, Inc.*, 2017 WL 3023748, * 7 (N.D. Ill 2017) (emphasis in original).  "California courts generally have construed the term 'arising out of' as having broader significance and connoting more than causation," and some have equated it with "origination, growth or flow from the event." *Smith Kandal Real Estate v. Continental Casualty Co.*, 67 Cal.App.4th 406, 414, 79 Cal.Rptr.2d 52 (1998); see also *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir.1985).  Thus, Stem's efforts to describe allegations related to the 2010 Claim as background facts is unavailing because "the fact that an underlying action includes different allegations than the prior proceeding is immaterial where the underlying complaint expressly alleged that it was based upon the prior proceedings." See, e.g., *ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th at 145-146.

Thus, the Prior and Pending Litigation exclusion applies although the 2010 Claim and the Underlying Action involve some different allegations and different parties. *Property I.D. Corp. v. Greenwich Ins. Co.*, 377 Fed.Appx. 648, 649, 2010 WL 1646017, at *1 (9th Cir. 2010); *Juszkiewicz v. Federal Ins. Co.*, supra, 1998 WL 476263 at *4; see


also, *Zunenshine v. Executive Risk Indemnity, Inc.*, 1998 WL 483475 at *5 (S.D.N.Y Aug. 17, 1998), aff'd 182 F.2d 902, 1999 WL 464988 (2d Cir.1999); *HR Acquisition I Corp. v. Twin City Fire Insurance Co.*, 547 F.3d 1309 (11th Cir., 2008); *Federal Insurance Co. v. Raytheon Co.*, 426 F.3d 491, 497-498 (1st Cir. 2005). All that is required to trigger the Prior and Pending demand exclusion is that the Underlying Action arises out of, directly or indirectly results from, *or in any way* involves any of the 2010-2011 Demands, EDD Claim or 2011 Arbitration. Because the Underlying Action is based upon and arises out of and directly and indirectly involves the 2010 Claim, the Prior and Pending litigation exclusion bars coverage for the Underlying Action.

### C. The Prior Knowledge Exclusion Bars Coverage

Stem believes that the Prior Knowledge exclusion does not apply because it again alleges that the "Claims in the 2017 Shareholder Lawsuit do not arise out of the 2010 Employment Dispute" and then concludes that the "Prior Knowledge Exclusion does not eliminate the potential for coverage." The Prior Knowledge exclusion applies where, as here, the underlying action "includes allegations that are "a continuation of purported misconduct" alleged in the prior complaint, and where "any of the Insureds" such as Rice, Buzby or Reineccius, was aware of the alleged conduct. *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F.Supp. 1213, 1223 (C.D. Cal. 1997). The Prior Knowledge exclusion "disclaims liability for any Claim based upon any Wrongful Act which any of the Insured had reason to believe at the time could be expected to rise to such Claim." *Westinghouse Digital v. Scottsdale Insurance Company*, supra, 2014 WL 12573376, *11. The exclusion only requires that "any of the Insureds" have knowledge of any fact, circumstance or situation, which could reasonably be expected to give rise to a Claim. *Minkler v. Safeco Ins. Co. of America*, 49 Cal.4th 315, 318 (Cal. 2010).

This means that if Reineccius, Buzby, Rice, or Thompson had reason to believe that any fact, circumstances, situation or Wrongful Act occurring prior to the Continuity Date could reasonably be expected to give rise to a Claim, then coverage is barred. All of them knew that the alleged wrongful termination of Reineccius, and the taking of his

shares in Stem could and did give rise to both the 2010 Claim, the Underlying Action and future actions. This is why Stem and the insureds attempted to have Reineccius release all claims against the company in 2011 and again in 2019. Even after the 2011 Settlement Agreement, Stem's board was well aware of the potential for future claims involving Plaintiffs, which is why the board addressed Plaintiffs' ownership of shares in Stem in board meetings. (Ex. S); *Coregis Insurance Co. v. Camico Mutual Insurance Co.*, supra, 959 F.Supp. 1222 (C.D. Cal. 1997); *Phoenix Ins. Co. v. Sukut Constr. Co.*, 136 Cal.App.3d 673, 676-677 (Cal.Ct.App. 1982). It is not uncommon for a claimant to try to "resurrect past grievances" even if a release is executed. Stem, Reineccius, Buzby and Rice knew of the Claim before the Continuity Date of October 13, 2011, and because they had reason to believe that the same alleged wrongful acts would give rise to future claims, the Prior Knowledge exclusion applies as a matter of law.

### D. Stem Breached the Application and Warranty Conditions

Stem contends that it did not breach the Application or Warranty Condition because the 2010 and 2011 Demand Letters and Demand for Arbitration are not demand letters as they did not threaten litigation. Stem, Reineccius, Thompson and Buzby all received demand letters that included threats of litigation giving rise to the 2011 Arbitration and 2011 Settlement Agreement. The 2010 email, the 2010 Demand letter, the November 2010 Demand Letters, and the 2011 Demand Letter to Stem all included demands, assertions of wrongdoing and either explicitly or implicitly threatened legal action. Stem's November 11, 2010 demand letter to Reineccius also included numerous demands, assertions of violations of the law, and threatened legal action. (Ex. K). The demand for arbitration is a demand letter. *Westinghouse Digital, LLC v. Scottsdale Insurance Company*, 2014 WL 12573376 (C.D. Cal. 2014); *Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v. Doctors Med. Ctr. of Modesto, Inc.*, No. C-07-1740EMC, 2007 WL 2385097, at *2 (N.D. Cal. Aug. 17, 2007) aff'd sub nom. *Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. Cal. v. Doctors Med. Ctr. of Modesto*, 351 Fed.Appx. 175 (9th Cir. 2009).

Stem further contends that Scottsdale's remedies are "limited", but the Policy provides that, "in the event the Application, . . .contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by Scottsdale under the Policy, the Policy, including each and all Coverage Sections, shall not afford coverage to" Stem.  Ex. A, Section D.2. as amended by Endorsement 10. Stem argues that the term "Application" is limited to the Application for the particular policy at issue or the immediate renewal policy.  Stem misinterprets which policy applies.  Given that the Underlying Action is a Claim first made prior to the 2011-2012 Policy, the 2011-2012 Policy would apply to evaluate coverage.  However, even under any subsequent policy, the result would be the same.  This is because Application means "*all* applications, including any attachments thereto, and *all* other information and materials submitted by or on behalf of the Insureds to the Insurer in connection with the Insurer underwriting this Policy or *any policy* of which this Policy is a renewal or replacement. *All* such applications, attachments, information, materials and documents are deemed attached to and incorporated into this Policy." Ex. A, p. 1 of 5) (emphasis added).  The definition does not state "the" Application for "*the* policy of which this Policy is a renewal", but instead states that Application means "all" Applications submitted to Scottsdale for "any" policy of which this Policy is a renewal.  This means that "all" applications submitted to Scottsdale are considered to be the Application, including the original application for the original 2011-2012 Policy.  To accept Stem's interpretation would be ignoring the terms "any" and "all" in the definition.

### E.     There is No Potential for Coverage for the Claim Against Buzby

Stem contends that the allegations related to the Buzby Loan are not related to the 2010 Claim or the allegations related to the 2017 financing, and that the loan was made based upon Buzby's role as a board member.  Stem cannot dispute that the complaints in the Underlying Action allege that the insureds "have employed various unlawful means to deprive Plaintiff Reineccius and his colleagues of the benefits of the company he founded" and that the insureds undertook the various transactions to benefit themselves.

Ex. C, para. 2. Regardless of the number of transactions referred to in the Underlying Action, they are all related to the alleged scheme.

Stem does not dispute that the allegations against Buzby cannot arise solely in his capacity as a board member because he made the loan in his personal capacity. Even if Plaintiffs allege that his loan was also a breach of his fiduciary duty, this is immaterial because the loan must have been made "solely" in his capacity as a board member and it was not. *Olson v. Federal Ins. Co.*, 219 Cal.App.3d 252, 261, (1990); *McRory v. Catlin Specialty Insurance Company*, 2011 WL 13137576, * 3 (W.D. Wa. 2011).

### F.    The Insured versus Insured Exclusion Bars Coverage

Stem relies solely upon the Court's prior order denying Scottsdale's motion to dismiss in support of its argument that the IvI Exclusion does not apply and erroneously claims that Scottsdale submitted no new evidence warranting a departure from the ruling. The law-of-the-case doctrine does not mean that this Court is bound by its earlier ruling on a motion to dismiss, or that Scottsdale has a duty to defend. . *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, supra, 254 F.3d at 888; *United States v. Smith*, supra, 389 F.3d at 949; *Certain Interested Underwriters at Lloyd's, London v. Bear, LLC*, 796 Fed.Appx.372, 377 (9th Cir. 2019). Even the denial of an insurer's motion for summary judgment on the duty to defend does not necessarily mean the insurer has a duty to defend, and insurer may still prove the lack of such a duty at trial. *McMillin Companies, LLC v. American Safety Indemnity Co.*, 233 Cal.App.4th 518, 533 (2015). The evidence not before the Court on the motion to dismiss demonstrates that the parties Underlying Action was based upon the 2010 Claim and 2011 Settlement Agreement as the parties re-litigated the 2010 Dispute and 2011 Settlement Agreement in the Underlying Action. (Doc. 33-3 and Doc 33-5). Thus, exception iv. does not apply.

### G.    Plaintiff Failed To Prove Its Claim For Bad Faith

Stem argues that Plaintiff argues that State Farm acted in bad faith because it investigated Stem's claim. Stem first complains that Scottsdale "systematically sought

out, and obtained, documentation about the 2010 Employment Dispute" from Stem and Stem provided certain select documents. See, Opp. 18:21-22; 19:3-7. Stem alleges this effort was designed to support a denial of coverage and that Scottsdale should have consulted with Stem's defense counsel to learn more about the Underlying Action. However, talking to counsel would not change the allegations in the complaints, and the litigation of those claims. "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1114 (1995). Talking with defense counsel would have confirmed that the parties were litigating 2010 Claim in the Underlying Action as counsel confirms defendants moved for summary judgment on the 2010 Claim, because although the insureds believed such claim was released, Plaintiffs resurrected them in the Underlying Action.

### H. Plaintiff Failed To Prove Its Claim For *Brandt* Fees

Stem argues that it produced a timesheet with five entries highlighted as evidence that it satisfied its disclosure and discovery obligations with respect to *Brandt* fees, but also argues that its *Brandt* fees cannot be determined until there is a recovery because it has a contingency fee agreement. This is contrary to *Cassim v. Allstate Ins. Co.,* 33 Cal. 4th 780, 811-812 (2004), in which the California Supreme Court made clear the necessity of maintaining detailed billing records and identifying such fees even if a contingency fee agreement is in place. *Id.* at 812; *see also Slottow v. Am Casualty Co.,* 10 F.3d 1355, 1362 (9th Cir. 1993). Because Stem failed to identify its *Brandt* fees in disclosures or discovery, its claim for *Brandt* fees fails as a matter of law.

### I. Stem Failed To Prove Its Claim For Punitive Damages

Stem argues it is entitled to punitive damages for the same reasons as the bad faith claim. However, even evidence of bad faith is insufficient to establish a claim for punitive damages. *Patrick v. Maryland Casualty Co.*, 217 Cal.App.3d. 1566, 1576 (1990). Stem was required to provide evidence of malice, oppression or fraud, and it

did not.  Thus, Stem failed to meet its burden of proving it is entitled to punitive damages and Scottsdale is entitled to summary judgment on this claim as well.  Stem cites to *Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1161 (9th Cir. 2001), but the court denied summary judgment because plaintiffs submitted evidence that the insurers actions were willful and "rooted in established company practice."  There is no such evidence of a company practice here.  Also, in *Tibbs v. Great American Ins. Co*., 755 F.3d 1370, 1375 (9th Cir. 1985), the court denied summary judgment where employees of the company advised the claim attorney that the insured was entitled to a defense and yet the adjuster "conducted little or no investigation into Great American's duty to defend: he did not compare Tibbs's claim with the insurance company policy or even inspect the policy itself. In fact, when informed that the state court judge thought that Tibbs was entitled to a defense, Bickley responded, "F___ the Judge." There are no similar facts in this case.  Here, Scottsdale did investigate the claim, read the pleadings, read the policy, talked with Stem and read the documents Stem provided.  Unlike the cases Stem cites, Scottsdale's investigation and coverage position were reasonable, and there is no evidence of malice, oppression or fraud.

### III.  CONCLUSION

Based upon the above points and authorities, Scottsdale respectfully requests that the Court grant its Motion for Summary Judgment.

Dated:  April 15, 2021                COZEN O'CONNOR

By: __/s/*Valerie D. Rojas*__
Valerie D. Rojas
Angel Marti, III
Attorneys for Defendant SCOTTSDALE INSURANCE COMPANY