**Gary W. Osborne (Bar No. 145734)**
**Dominic S. Nesbitt (Bar No. 146590)**
OSBORNE & NESBITT LLP
101 West Broadway, Suite 1330
San Diego, California 92101
Phone: (619) 557-0343
Fax: (619) 557-0107
gosborne@onlawllp.com
dnesbitt@onlawllp.com

Attorneys for Plaintiff, STEM, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEM, INC., a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,<br><br>　　　　Defendant. | CASE NO. 3:20-cv-02950-CRB<br><br>Assigned to Honorable Charles R. Breyer<br><br>**PLAINTIFF STEM, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE MEASURE OF DAMAGES SCOTTSDALE OWES FOR BREACHING ITS DUTY TO DEFEND**<br><br>Date:　　August 12, 2021<br>Time:　　10:00 a.m.<br>CTRM:　　6 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on August 12, 2021, at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Charles R. Breyer, in Courtroom 6 of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, plaintiff Stem, Inc. ("Stem") will and hereby does move the Court for partial summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for an order that Scottsdale Insurance Company ("Scottsdale") is required to pay as damages for breach of the duty to defend all reasonable fees and costs that Stem has incurred to defend its three Directors and Officers (*i.e.*, Messrs Rice, Carrington and Buzby) against the 2017 Shareholder Lawsuit, including fees and costs related to the defense of claims that are not even potentially covered.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Gary W. Osborne, Request for Judicial Notice, Appendix of Exhibits, Appendix of Secondary Authorities, and the proposed Order filed and served concurrently herewith, as well as all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

## ISSUE TO BE DECIDED

What is the measure of damages, with respect to defense fees and costs, Scottsdale owes for breaching its duty to defend triggered by the 2017 Buzby Loan Claim in the 2017 Shareholder Lawsuit?  Specifically, under California law, is Scottsdale required to pay as damages for breach of the duty to defend all reasonable fees and costs that Stem has incurred to defend its three Directors and Officers (*i.e.*, Messrs Rice, Carrington and Buzby) against the 2017 Shareholder Lawsuit, including fees and costs related to the defense of claims that are not even potentially covered?[1]

---

[1] To be clear, Stem is not seeking by this motion an adjudication of the specific amount of reasonable attorney fees and costs it has incurred to defend its three directors, its right to prejudgment interest thereon, or its right to any other damages.

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. This Court Grants In Part Stem's Motion For Partial Summary Judgment Regarding Scottsdale's Defense Obligations . . . . . . . . . . . . 3

    C. Stem Is Granted Leave To File This Second Motion For Partial Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. A Party May Move For Partial Summary Judgment On A "Part" Of A Claim Or Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. Pursuant To The California Supreme Court's Decision In *Buss*, Scottsdale Had A Duty To Defend The "Entirety" Of The 2017 Shareholder Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C. Scottsdale Owes As Damages What It Wrongfully Failed To Provide, *i.e.*, The Cost Of A Complete Defense . . . . . . . . . . . . . . . . . 6

    D. Scottsdale Has No Right To Deduct From The Damages It Owes The Cost Of Defending Non-Covered Claims . . . . . . . . . . . . . 7

    E. An Insurer Should Not "Profit" From Its Breach . . . . . . . . . . . . . . . 9

    F. Messrs. Rice And Carrington Also Face "Potential" Liability For The 2017 Buzby Loan Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Electronics For Imaging, Inc. v. Atlantic Mut. Ins. Co.,*
   2007 U.S. Dist. LEXIS 38058, (N.D. Cal. May 14, 2007) . . . . . . . . . . . . . 8, 10

*FMC Corp. v. Vendo Co.,*
   196 F. Supp.2d 1023 (E.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*KM Strategic Mgmt., LLC v. Am. Cas. Co. of reading,* PA
   2016 U.S. Dist. LEXIS 98273 (C.D. Cal. July 25, 2016) . . . . . . . . . . . . . . . 6, 8

*Robi v. Five Platters, Inc.,*
   918 F.2d 1439 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thane International, Inc. v. Hartford Fire Ins. Co.,,*
   2009 U.S. Dist. LEXIS 13696 (C.D. Cal. Feburary 19, 2009) . . . . . . . . . . . . 8

*Travelers Indem. Co. v. Centex Homes,*
   2014 U.S. Dist. LEXIS 105009 (E.D. Cal. July 30, 2014) . . . . . . . . . . . . . . 7, 9

**State Cases**

*Aerojet-General Corp. v. Transport Indemnity Co.,*
   17 Cal. 4th 38 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Archdale v. American Internat. Specialty Lines Ins. Co.,*
   154 Cal.App.4th 449 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Buss v. Superior Court,*
   16 Cal.4th 35 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 7

*Cassady v. Morgan, Lewis & Bockius LLP,*
   145 Cal.App.4th 220 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Comunale v. Traders and General Ins. Co.,*
   50 Cal.2d 654 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Montrose Chem. Corp. v. Superior Court,*
   6 Cal. 4th 287 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Orman v. Cullman*
   974 A.2d 5 (Del. Ch. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Presley Homes v. Am. States Ins. Co.,*
   90 Cal.App.4th 571 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Scottsdale Ins. Co. v. MV Transp.,*
   36 Cal. 4th 643 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Sears Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
   340 N.J.Super. 223 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State v. Pacific Indem. Co.,*
   63 Cal.App.4th 1535 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State Farm General Ins. Co. v. Mintarsih,*
   175 Cal.App.4th 274 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Federal Statues**

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**State Statues**

California Civil Code section 3300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Other**

*California Practice Guide: Insurance Litigation*
   Hon. H. Walter Croskey, et al., (The Rutter Group 2020) . . . . . . . . . . . . . . . . 8

*California Practice Guide: Corporation*
   Hon. H. Walter Croskey, et al., (The Rutter Group 2020) . . . . . . . . . . . . . . . 13

*1-7 New Appleman on Insurance Law Library Edition*
   § 7.06, n. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

On May 3, 2021, this Court granted in part Stem's motion for partial summary judgment regarding Scottsdale's defense obligations. The Court ruled that "Scottsdale breached its defense obligations with respect to the 2017 Buzby Loan Claim, which was part of the underlying 2017 Shareholder Lawsuit."

The instant motion now frames for resolution the following legal issue: What damages, in the form of defense fees and costs, are owed by an insurer, such as Scottsdale, held to have breached a duty to defend? As explained below, under California law, an insurer that breaches its duty to defend is required to pay as damages all reasonable fees and costs incurred by its insured to defend the *entire* underlying lawsuit, including any fees and costs related to the defense of non-covered claims.

This issue has arisen because Scottsdale has expressed its position that it "is only obligated to pay the reasonable and necessary costs to defend Buzby in connection with the 2017 Buzby Loan claim." In other words, Scottsdale is apparently of the view it only owes as damages those fees and costs specifically incurred to defend the 2017 Buzby Loan Claim, and that its duty to defend extends only to Mr. Buzby.

Scottsdale is mistaken on both counts. Any argument by Scottsdale that it is only obligated to pay as damages those defense fees and costs incurred "in connection with the 2017 Buzby Loan claim" is foreclosed by the California Supreme Court's decision in *Buss v. Superior Court*, 16 Cal.4th 35 (1997). *Buss* holds that in a "mixed" action, in which some of the claims are at least potentially covered and others are not, an insurer has a duty to defend the action *"in its entirety." Id.* at 58-59 (italics in original). The California Supreme Court explained, "To defend meaningfully, [the insurer] must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." *Id.* at 59.

While *Buss* addressed the scope of defense fees owed by a defending insurer that honors its insurance contract, the California Supreme Court's decision also legally dictates the scope of damages that an insurer must pay after breaching the duty to defend. This is true because, under California law, the general measure of contract damages is the benefit a plaintiff would have received had the defendant rendered performance as promised. In the duty-to-defend context, post-*Buss*, those damages are the entirety of the defense fees and costs the insured has incurred, since those are what the insurer would have had a duty to pay had it honored its contract. Simply stated, if the law requires a defending insurer to pay the entirety of the insured's defense expenses, then an insurer that breaches its duty to defend must, *a fortiori*, do the same. Numerous decisions subsequent to *Buss*, as well as respected secondary authorities on insurance law, support this conclusion.

Scottsdale's other contention that it "is only obligated to pay the reasonable and necessary costs to defend Buzby" ignores the potential liability facing Messrs. Rice and Carrington, the two other Stem director defendants, with respect to the 2017 Buzby Loan Claim. Indeed, this issue – namely, <u>who</u> faces potential liability with respect to the Buzby Loan Claim – was framed by Stem's prior motion for partial summary judgment. Stem argued in support of its prior motion that "[t]he Buzby Loan Claim was 'first made' <u>against Stem's directors</u> when the 2017 Shareholder Lawsuit was filed on May 12, 2017, *i.e.*, during the term of the 2016-2017 Policy." (Underscore added.) On May 3, 2021, this Court "grant[ed] Stem's motion with respect to Scottsdale's coverage obligations in relation to the 2017 Buzby Loan Claim in the underlying 2017 Shareholder Lawsuit." As explained below in Section III. F. of this brief, the 2017 Shareholder Lawsuit plainly exposes all three of Stem's directors to at least "potential" liability for breach of fiduciary duty with respect to the 2017 Buzby Loan Claim.

Stem respectfully requests an adjudication that Scottsdale is required to pay as damages for breach of the duty to defend all reasonable fees and costs that Stem has incurred to defend its three Directors and Officers (*i.e.*, Messrs Rice, Carrington and

Buzby) against the 2017 Shareholder Lawsuit, including fees and costs related to the defense of non-covered claims.

## II.
## STATEMENT OF FACTS

**A. Overview**

On April 29, 2020, Stem filed this insurance coverage action against Scottsdale. Stem alleges in its complaint that Scottsdale wrongfully disclaimed an obligation to defend its three directors, Messrs. Rice, Carrington and Buzby, against a lawsuit pending in the San Mateo County Superior Court entitled *Stacey Reineccius, et al. v. Zeb Rice, et al.*, and assigned Case No. 17CIV02098 (the "2017 Shareholder Lawsuit"). Declaration of Gary W. Osborne ("Osborne Decl."), ¶2.

**B. This Court Grants In Part Stem's Motion For Partial Summary Judgment Regarding Scottsdale's Defense Obligations**

On May 3, 2021, this Court "grant[ed] Stem's motion with respect to Scottsdale's coverage obligations in relation to the 2017 Buzby Loan Claim in the underlying 2017 Shareholder Lawsuit." *See* Court's Order dated May 3, 2021, attached as Exhibit "C," p. 0048:5-7; Osborne Decl., ¶5; and Req. for Judicial Notice. The Court ruled that Scottsdale had "breached its defense obligations" with respect to the 2017 Buzby Loan Claim. Exh. "C," p. 0071:2-3. The Court noted in its Order that an issue not squarely presented by the parties' cross-motions was "the magnitude of the Loss" Scottsdale is obligated to pay under its policy. Exh. "C," p. 0068, n.7.

**C. Stem Is Granted Leave To File This Second Motion For Partial Summary Judgment**

The parties' Joint Status Report, filed on May 25, 2021, reflects the parties' sharp disagreement over the measure of damages Scottsdale owes for breaching its duty to defend. Stem expresses its view that "under California law, Scottsdale must reimburse Stem the full amount of the defense . . . costs it has incurred, and will continue to reasonably incur, to defend its directors against the ongoing 2017 Shareholder Lawsuit."

*See* Parties' Joint Status Report, attached as Exhibit "D," p. 0074:18-22; Osborne Decl., ¶6; and Req. for Judicial Notice. For its part, Scottsdale contends it "is only obligated to pay the reasonable and necessary costs to defend Buzby in connection with the 2017 Buzby Loan claim." Exh. "D," p. 0077:13-14.

Due to the magnitude of difference between the parties' respective positions, on June 4, 2021, Stem filed a motion for administrative relief seeking leave to file a second motion for partial summary judgment. Specifically, Stem sought leave to file a second motion "regarding the legal measure of damages, in the form of defense fees and costs, that Scottsdale is obligated to pay for breaching its duty to defend." *See* Stem's Motion for Administrative Relief, attached as Exhibit "E," p. 0083:3-6; Osborne Decl., ¶7; and Req. for Judicial Notice.

On June 14, 2021, this Court granted Stem's motion for administrative relief, ruling:

> Stem now requests leave to move for partial summary judgment regarding the legal measure of damages. [Citation omitted.] Because that is the next logical step, the Court grants Stem's request.

*See* Court's Order dated June 14, 2021, attached as Exhibit "F," p. 0089:16-19; Osborne Decl., ¶8; and Req. for Judicial Notice.

## III.

## ARGUMENT

### A. A Party May Move For Partial Summary Judgment On A "Part" Of A Claim Or Defense

A party may move for partial summary judgment on a "part" of a claim or defense. *See* Fed. R. Civ. P. 56(a). As such, "[s]ummary adjudication may be appropriate on clearly defined, distinct issues." *FMC Corp. v. Vendo Co.*, 196 F. Supp.2d 1023, 1029 (E.D. Cal. 2002), citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990). As noted, the Court has granted Stem leave to file the instant motion for partial summary

///

judgment addressing the measure of damages Scottsdale is required to pay under California law for breaching its duty to defend.

**B.     Pursuant To The California Supreme Court's Decision In *Buss*, Scottsdale Had A Duty To Defend The "Entirety" Of The 2017 Shareholder Lawsuit**

In *Buss v. Superior Court*, 16 Cal.4th 35 (1997), the California Supreme Court held that in a "mixed" action, in which at least one of the claims is potentially covered and at least one of the claims is not, the insurer has a duty to defend the action *"in its entirety." Id*. at 58-59 (italics in original).

The California Supreme Court made clear the duty to defend a "mixed" action in its entirety is not one arising out of contract: the insurer "has a duty to defend as to the claim[] that [is] at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to [the claim] that [is] not, not having been paid therefor." *Buss, supra*, 16 Cal.4th at 48.  Rather, the Court held, the duty to defend an entire "mixed" action is a duty "imposed by law" in support of the policy: "To defend meaningfully, [it] must  defend immediately. [Citation.] To defend immediately, it must defend entirely." *Id.* at 48-49; see also *State Farm General Ins. Co. v. Mintarsih*, 175 Cal.App.4th 274, 284-286 (2009) (explaining that *Buss* distinguished between a "contractual" duty to defend, which applies to the claims that are "at least potentially covered," and an "implied in law" duty to defend, which applies to all other claims in the underlying suit if at least one claim is potentially covered); see also *Presley Homes v. Am. States Ins. Co.*, 90 Cal.App.4th 571, 576 (2001) ("an insurer's duty to defend the entire action is based on public policy, not the terms of the parties' contract.").

The policy triggered by the 2017 Buzby Loan Claim, *i.e.*, the 2016-2017 Policy, includes an express "duty to defend." *See* 2016-2017 Policy, attached as Exhibit "G," p. 0108 ("It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**."); Osborne Decl., ¶9.  Accordingly, had Scottsdale discharged its "duty to

/ / /

/ / /

defend," it would have been obligated by California law to defend the <u>entire</u> 2017 Shareholder Lawsuit.[2]

### C. Scottsdale Owes As Damages What It Wrongfully Failed To Provide, *i.e.*, The Cost Of A Complete Defense

Under California Civil Code section 3300, the measure of damages for the breach of an obligation arising from contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." The theory behind allowing for damages in contract law is that the injured party should receive, as nearly as possible, the equivalent of the benefits of the contract as he or she would have received had performance been rendered as promised. *See Archdale v. American Internat. Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 469 (2007).

As discussed, if Scottsdale had performed its duty to defend, triggered by the 2017 Buzby Loan Claim in the 2017 Shareholder Lawsuit, it would have been obligated under California law to provide Stem's directors with a *complete* defense of the 2017 Shareholder Lawsuit. *See Buss, supra,* 16 Cal.4th at 58-59 (holding that in a "mixed" action, *i.e.*, involving both covered and non-covered claims, the insurer has a duty to defend the action *"in its entirety"*) (italics in original). Accordingly, as a matter of basic contract law, Scottsdale must now pay as damages for breaching its duty to defend what it wrongfully failed to provide, *i.e.*, the cost of a <u>complete</u> defense, including the defense of any non-covered claims. *See, e.g.*, *KM Strategic Mgmt., LLC v. Am. Cas. Co. of*

---

[2] Scottsdale's 2016-2017 Policy includes an "Allocation" endorsement that requires Scottsdale to pay one hundred percent of "Costs, Charges and Expenses" where a claim includes both covered and uncovered matters. Exh. "G," p. 0110. This provision may constitute a coverage enhancement in those states that do not require insurers with a "duty to defend" to provide the complete defense of a "mixed" action. *See, e.g., Sears Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 340 N.J.Super. 223, 242 (2001) (applying New Jersey law). In California, however, insurers are already prohibited by law from allocating defense costs in the discharge of a "duty to defend." *See Buss, supra,*16 Cal.4th at 58-59; *see also Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 60 (1997) ("[T]his analysis applies . . . not only between *claims* but also between *parts* of a single claim.") (italics in original). Accordingly, Scottsdale's "Allocation" endorsement is consistent with California law governing the scope of an insurer's duty to defend.

*Reading*, PA, 2016 U.S. Dist. LEXIS 98273, **20-21  (C.D. Cal. July 25, 2016) ("having breached its duty to defend, American Casualty is required, as a matter of law, to pay as damages all reasonable and necessary fees and costs that plaintiffs incurred to defend against [the underlying actions], <u>including any fees and costs related to the defense of claims for which there was not even a potential for coverage</u>.") (underscore added).

### D. <u>Scottsdale Has No Right To Deduct From The Damages It Owes The Cost Of Defending Non-Covered Claims</u>

In *Buss*, the California Supreme Court held that an insurer that fulfills its immediate duty to defend, and reserves a right to seek reimbursement, may later seek "restitution" from the insured of any fees and costs that were solely attributable to defending claims not potentially covered by its policy.  *Buss, supra*, 16 Cal.4th at 50-53; *see also Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 659 (2005) ("where the insurer, <u>acting under a reservation of rights</u>, has prophylactically financed the defense of claims as to which it owed no duty of defense, it is entitled to restitution.") (underscore added).

However, a <u>breaching</u> insurer, such as Scottsdale in this case, does not have any such right to "restitution."  It does not have such a right because it neither discharged its immediate duty to defend, nor reserved any right to seek reimbursement, nor made any payment of defense costs.  In short, a breaching insurer will have satisfied *none* of the elements of a restitution claim.  *See Travelers Indem. Co. v. Centex Homes*, 2014 U.S. Dist. LEXIS 105009, **6-7 (E.D. Cal. July 30, 2014) ("To state a claim for equitable reimbursement, Plaintiffs must plead that (1) they agreed to immediately defend Defendant in the *Chang* action in its entirety; (2) they paid money to defend claims against Defendant 'that are not even potentially covered' under the insurance policies; and (3) they reserved their right to seek reimbursement.").

Accordingly, California decisions subsequent to *Buss* have made clear that breaching insurers must pay as damages the *entirety* of the reasonable fees and costs their insureds incurred, and have no right to deduct the costs of defending non-covered claims.

*See, e.g.*, *Electronics For Imaging, Inc. v. Atlantic Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 38058, *7 (N.D. Cal. May 14, 2007) (Judge Breyer) ("As defendant did not provide plaintiff with a defense, defendant is liable for plaintiff's costs and fees incurred in defending the underlying action, <u>including those fees and costs incurred in defending claims that are not even potentially covered</u>.") (underscore added); *Thane International, Inc. v. Hartford Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 13696, *16 (C.D. Cal. February 19, 2009) ("'[The insurer's] argument that its duty to defend should be apportioned with its insured . . . is contrary to California law.'"), quoting *State v. Pacific Indem. Co.*, 63 Cal.App.4th 1535, 1548 (1998); *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal.App.4th 220, 236 (2006) ("When an insurer *refuses* to defend an action in which a potential for coverage exists, the insured may recover defense costs, <u>including attorney's fees allocable to the defense of noncovered claims</u>, unless the insurer can prove they were unreasonable or unnecessary.") (italics in original; underscore added); *KM Strategic, supra*, 2016 U.S. Dist. LEXIS 98273, **20-21 ("having breached its duty to defend, American Casualty is required, as a matter of law, to pay as damages all reasonable and necessary fees and costs that plaintiffs incurred to defend against [the underlying actions], <u>including any fees and costs related to the defense of claims for which there was not even a potential for coverage</u>.") (underscore added).

The authors of California's leading treatise on insurance law are in agreement that a breaching insurer owes as damages the entirety of the reasonable defense costs incurred by the insured:

> **H.    Damages for Breach of Duty to Defend**
>
> \*\*\*
>
> **Includes defense costs allocable to noncovered claims:** The insured may recover its defense costs, including attorney fees allocable to the defense of noncovered claims (because the insurer's duty to defend extends to all claims if any claim is potentially covered, *see* ¶ 7:629) unless the insurer can prove such fees were unreasonable or unnecessary.

Hon. H. Walter Croskey, *et al.*, CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION § 7:691.15 (The Rutter Group 2020); *see also id.* at § 12:652 ("By refusing to provide a

defense, the insurer becomes liable for defense costs incurred by the insured allocable to claims *not even potentially covered* under the policy.") (italics in original) (attached to the Appendix of Secondary Authorities as Exhibits 1 and 2).

This rule has also been acknowledged by insurance law authorities outside of California. *See, e.g.*, 1-7 New Appleman on Insurance Law (Library ed.) § 7.06, n. 39 ("Based on [the *Buss*] rationale, in California, at least, the policyholder's recovery where the insurer does not defend should include reasonable and necessary fees and expenses to defend against claims within the underlying suit that are not potentially covered.") (attached to the Appendix of Secondary Authorities as Exhibit 3).

### E. An Insurer Should Not "Profit" From Its Breach

As the aforementioned authorities make clear, post-*Buss*, a breaching insurer has no right to deduct from the damages it must pay the cost of defending non-covered claims. Instead, a breaching insurer must pay in damages what a defending insurer is required by law to pay, namely, the cost of a complete defense. Furthermore, having defaulted on its immediate defense obligation, and having therefore failed to reserve any right to seek reimbursement, a breaching insurer does not possess any right to "restitution." *See Travelers Indem., supra*, 2014 U.S. Dist. LEXIS 105009, **6-7. Simply put, restitution is an equitable right the law affords to a defending insurer that immediately discharges its duty to defend under reservation; <u>it is not a right the law affords to an insurer ordered to pay damages for breaching its duty to defend</u>.

Scottsdale's argument – that it only has to pay as damages those defense costs incurred by Stem to defend the 2017 Buzby Loan Claim – would, in essence, carve out an exception to the *Buss* rule for breaching insurers. Only insurers that honor their duty to defend must provide a complete defense, while breaching insurers are excused. Such a rule would actually create an incentive for insurers to breach the duty to defend. *See Comunale v. Traders and General Ins. Co.*, 50 Cal.2d 654, 660 (1958) (An insurer "should not be permitted to profit by its own wrong.").

///

This Court addressed and rejected a similar argument made by a breaching insurer in *Electronics For Imaging, supra*. In that case, this Court noted that the insurer's position would serve only as a temptation for insurers to disclaim a duty to defend:

> Here, defendant advocates for a rule that would give an insurer a disincentive to provide a defense; regardless of whether the insurer provides a defense, the insurer would not be liable for those costs that it proves were incurred solely in defense of non-covered claims. It is unsurprising that defendant does not cite a single case that allows for such a "deduction" in damages where the insurer refused to provide a defense at all.

2007 U.S. Dist. LEXIS 38058, **5-6.

### F. Messrs. Rice and Carrington Also Face "Potential" Liability For The 2017 Buzby Loan Claim

Scottsdale's contention that it "is only obligated to pay the reasonable and necessary costs to defend Buzby" is also unavailing. As discussed below, all three of Stem's directors are broadly accused by the underlying shareholder plaintiffs of being "conflicted," and of not comprising an "independent board," with respect to "each act and omission" described in their underlying complaint, *i.e.*, including Stem's loan transaction with Mr. Buzby.

In its motion for partial summary judgment regarding Scottsdale's duty to defend, Stem averred that the 2017 Buzby Loan Claim is a claim made against all three of its directors:

> Stem submits that under subsection a. of the definition of "**Claim**," the 2017 Shareholder Lawsuit asserts *two* separate and unrelated **"Claims"** <u>against Stem's directors</u>. One being a "written demand . . . for monetary damages" in connection with the 2013 Series B Financing (the "Series B Financing Claim"), and the other being a "written demand . . . for monetary damages" in connection with the 2017 Buzby Loan (the "Buzby Loan Claim").

Exh. "B," p. 0036:3-8 (italics in original; underscore added).

/ / /

/ / /

/ / /

Stem also averred that:

> The Buzby Loan Claim was "first made" <u>against Stem's directors</u> when the 2017 Shareholder Lawsuit was filed on May 12, 2017, *i.e.*, during the term of the 2016-2017 Policy.

Exh. "B," p. 0037:12-16 (underscore added).

On May 3, 2021, this Court "grant[ed] Stem's motion with respect to Scottsdale's coverage obligations in relation to the 2017 Buzby Loan Claim in the underlying 2017 Shareholder Lawsuit." *See* Exh. "C," p. 0048:5-7. The Court ruled that Scottsdale had "breached its defense obligations" with respect to the 2017 Buzby Loan Claim. Exh. "C," p. 0071:1-3.

Messrs. Rice and Carrington's "potential" liability for the 2017 loan transaction, as well as Mr. Buzby's, is apparent on the face of the underlying complaint. Paragraph 79 of the original underlying complaint describes a short-term loan of $1.5 million that Mr. Buzby extended to Stem in 2017, that was allegedly repaid by Stem one month later with cash and stock worth over $2 million. The clear implication is that the loan's repayment terms were exorbitant or otherwise disadvantageous to Stem. This loan transaction is alleged to have constituted "self dealing" on Mr. Buzby's part, amounting to a "separate" breach of his fiduciary duty to the underlying shareholder plaintiffs.[3]

For their part, Messrs. Rice and Carrington are broadly accused in the original underlying complaint of being conflicted, and of not comprising an independent board, in connection with "each act and omission described herein," which includes the allegedly improper loan transaction described at paragraph 79. Specifically, at paragraph 85, the underlying shareholder plaintiffs allege as follows:

> At all relevant times hereto, and in connection with each act and omission described herein, Defendants Buzby, Carrington, and Rice by their own admission were conflicted, did not comprise an independent board, and took no steps to mitigate their conflict of interest.

*See* Exh. "A," p. 0015, ¶85.

---

[3] *See Stephen A. Solomon v. Armstrong*, 747 A.2d 1098, 1113 n.36 (Del. Ch. 1999) ("Self-dealing claims may properly be seen as a subset of breach of loyalty claims.").

The original underlying complaint continues at paragraph 94 by expressly incorporating into the Count for Breach of Fiduciary Duty "the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein." Exh. "A," p. 0016, ¶94. This includes paragraph 79's allegations concerning Stem's loan transaction with Mr. Buzby, as well as paragraph 85's allegations that the board was "conflicted" and did not comprise an "independent board" with respect to "each act and omission described herein." It is then alleged that Messrs. Rice, Carrington and Buzby breached their fiduciary duties of loyalty, care and good faith resulting in the plaintiffs suffering damages in an amount to be determined at trial. *See* Exh. "A," pp. 0016-17, ¶¶95-99.[4]

In the underlying lawsuit, the parties dispute which state's law should apply. Stem's directors contend Delaware law applies, while the underlying shareholder plaintiffs argue for application of California law. *See* Underlying Court's Order filed on June 29, 2021, attached as Exhibit "H," p. 0139:9-22; Osborne Decl., ¶10; Req. for Judicial Notice. Under either state's law, however, Messrs. Rice and Carrington, who allegedly were "conflicted" and did not comprise an "independent board" in connection with the repayment terms of Mr. Buzby's $1.5 million short-term loan to Stem, face potential liability if those terms were exorbitant or otherwise disadvantageous to the company. Under Delaware law, the protection of the business judgment rule "can only be claimed by <u>disinterested directors</u> whose conduct otherwise meets the tests of business judgment." *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (underscore added); *see also Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002) ("'Independence' does not involve a question of whether the challenged director derives a benefit *from the transaction* that is not generally shared with the other shareholders. Rather, it involves an inquiry into whether the director's decision resulted from that director being *controlled*

---

[4] Stem's directors deny any allegation they were conflicted with respect to any of the transactions described in the underlying complaint, including the 2017 loan transaction between Stem and Mr. Buzby. The allegation has been made, however, and Scottsdale's 2016-2017 Policy promises to defend even allegations that are "groundless, false or fraudulent." Exh. "G," p. 0108.

by another.") (italics in original).  Similarly, under California law, a director faces liability if he or she lacks independence with respect to a co-director's self-interested transaction with the company.  *See* C. Hugh Friedman, *et al.*, CALIFORNIA PRACTICE GUIDE: CORPORATIONS § 6:245.3 (The Rutter Group 2020) ("To be protected by the business judgment rule, directors' decisions must be "disinterested and independent – i.e., made without self-interest or undue influence of others.") (attached to the Appendix of Secondary Authorities as Exhibit 4).

In sum, it may be fairly inferred from the allegations at paragraphs 79, 85 and 94-99 of the original underlying complaint, and the cited Delaware and California authorities, that Messrs. Rice and Carrington as allegedly "conflicted" directors face at least "potential" liability with respect to the allegedly disadvantageous loan transaction entered into between Stem and their co-director Mr. Buzby.  *See Scottsdale Ins. Co. v. MV Transp.*, *supra*, 36 Cal.4th at 655 ("If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage."); *see also Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 300 (1993) (duty to defend will only be excused if a claim *"can by no conceivable theory raise a single issue which could bring it within the policy coverage."* [citation and internal quotes omitted]) (italics in original).

Accordingly, any suggestion by Scottsdale that it does not owe as damages fees and costs incurred in connection with the defense of Messrs. Rice and Carrington should be rejected.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV.

## **CONCLUSION**

Stem respectfully requests an adjudication that Scottsdale is required to pay as damages for breach of the duty to defend all reasonable fees and costs that Stem has incurred to defend its three Directors and Officers (*i.e.*, Messrs Rice, Carrington and Buzby) against the 2017 Shareholder Lawsuit, including fees and costs related to the defense of claims that are not even potentially covered.

DATED: July 8, 2021           OSBORNE & NESBITT LLP


                              By: /s/Gary W. Osborne
                                  Gary W. Osborne
                                  Attorney for Plaintiff, STEM, INC.