1  **Gary W. Osborne (Bar No. 145734)**
2  **Dominic S. Nesbitt (Bar No. 146590)**
   OSBORNE & NESBITT LLP
3  101 West Broadway, Suite 1330
   San Diego, California  92101
4  Phone: (619) 557-0343
   Fax: (619) 557-0107
5  gosborne@onlawllp.com
   dnesbitt@onlawllp.com
6
   Attorneys for Plaintiff, STEM, INC.
7

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 STEM, INC.,                          CASE NO. 3:20-cv-02950-CRB
11 a Delaware Corporation,
                                        Assigned to Honorable Charles R. Breyer
12             Plaintiff,

13 vs.                                  **REPLY IN SUPPORT OF**
                                        **PLAINTIFF'S MOTION FOR**
14                                      **PARTIAL SUMMARY JUDGMENT**
   SCOTTSDALE INSURANCE              **REGARDING THE MEASURE OF**
15 COMPANY, an Ohio Corporation,     **DAMAGES SCOTTSDALE OWES**
                                        **FOR BREACHING ITS DUTY TO**
16             Defendant.               **DEFEND**

17                                      Date:      August 12, 2021
                                        Time:      10:00 a.m.
18                                      CTRM:      6

19

20
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1

## **TABLE OF CONTENTS**

2

3

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5

II.    STEM IS NOT AT THIS TIME SEEKING TO ADJUDICATE THE
       *AMOUNT* OF ITS DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

7

III.   *HOGAN'S DICTUM* WAS RENDERED OBSOLETE BY *BUSS*. . . . . . . . . . 3

8

9

IV.    IT IS LEGALLY IRRELEVANT HOW MUCH STEM HAS INCURRED
       THUS FAR TO DEFEND THE BUZBY LOAN CLAIM . . . . . . . . . . . . . . . . 6

10

11

V.     MESSERS. RICE, CARRINGTON AND BUZBY *ALL* FACE
       POTENTIAL LIABILITY FOR THE LOAN TRANSACTION . . . . . . . . . . . 8

12

13

VI.    SCOTTSDALE'S "DISGORGEMENT" ARGUMENT IS IMPROPER
       AND FLAWED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14

15

VII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

**Federal Cases**

4

5
*Crist v. Insurance Co. of North America,*
   529 F. Supp. 601 (D. Utah 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6
*Etchell v. Royal Ins. Co.,*
   165 F.R.D. 523 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

8
*KM Strategic Mgmt., LLC v. Am. Cas. Co. of reading,* PA
   2016 U.S. Dist. LEXIS 98273 (C.D. Cal. July 25, 2016) . . . . . . . . . . . . 4, 5, 6

9
*MLC Intellectual Prop., LLC v. Micron Tech., Inc.,*
   2019 U.S. Dist. LEXIS 180948 (N.D. Cal. Oct. 17, 2019) . . . . . . . . . . . . . . 11

10

11
*Safeway Stores v. National Union Fire Ins. Co.,*
   64 F.3d 1282 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12
*Thane International, Inc. v. Hartford Fire Ins. Co.,,*
   2009 U.S. Dist. LEXIS 13696 (C.D. Cal. Feburary 19, 2009) . . . . . . . . . . . . 5

13
*Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.,*
   457 F.3d 1106 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14

15

16
**State Cases**

17
*Archdale v. American Internat. Specialty Lines Ins. Co.,*
   154 Cal.App.4th 449 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18

19
*Buss v. Superior Court,*
   16 Cal.4th 35 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

20
*Comunale v. Traders and General Ins. Co.,*
   50 Cal.2d 654 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21

22
*Downey Venture v. LMI Ins. Co.,*
   66 Cal. App. 4th 478 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23

24
*Hicks v. Clayton,*
   67 Cal.App.3d 251 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25
*Hogan v. Midland National Ins. Co.,*
   3 Cal. 3d 553 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26

27
*Lambert v. Commonwealth Land Title Ins. Co.,*
   53 Cal.3d 1072 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28

*Montrose Chem. Corp. v. Superior Court,*
    6 Cal. 4th 287 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scottsdale Ins. Co. v. MV Transp.,*
    36 Cal. 4th 643 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Southern California Pizza Co., LLC v. Certain Underwriters at Lloyd's, London,*
    40 Cal.App.5th 140 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Pacific Indem. Co.,*
    63 Cal.App.4th 1535 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stephen A. Solomon v. Armstrong*
    747 A.2d 1098 (Del. Ch. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


**Federal Statues**

Fed. R. Civ. P. 56(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


**Local Rules**

Civil L.R. 7-9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**Other**

*California Practice Guide: Insurance Litigation*
    Hon. H. Walter Croskey, et al., (The Rutter Group 2020)  . . . . . . . . . . . . . . . 3

# I.

## INTRODUCTION

Scottsdale advances several arguments in opposition to Stem's motion, but none have merit. Scottsdale contends first that Stem has not met its burden of "proving its alleged damages." However, Stem is not seeking at this time an adjudication of <u>the amount</u> of the reasonable defense fees and costs it has incurred to defend its three directors. Instead, as its motion makes clear, Stem seeks only an adjudication of "the <u>legal measure</u> of damages, in the form of defense fees and costs, that Scottsdale is obligated to pay for breaching its duty to defend."

Next, relying upon *dictum* from a case that predates the California Supreme Court's landmark decision in *Buss v. Superior Court*, 16 Cal.4th 35 (1997), Scottsdale contends there exists an "exception" to the *Buss* rule that permits a breaching insurer, such as itself, to allocate defense expenses according to an "undeniable evidence" test. Scottsdale contends it can avail itself of this exception because Stem has not to date incurred any fees and costs defending the Loan Claim. However, not only is it factually incorrect that such defense expenses have not been incurred, it is legally irrelevant because there exists no such "exception" to the *Buss* rule. In that regard, Scottsdale simply ignores the myriad post-*Buss* legal authorities cited in Stem's opening brief, all of which are in accord that a breaching insurer must now pay as damages the *entirety* of the insured's reasonable defense expenses in a "mixed" action, including fees and costs incurred to defend non-covered claims.

Third, Scottsdale argues that Messrs. Carrington and Rice do not face potential liability with regard to the Loan Claim. However, this is patently incorrect for the reasons explained in Stem's opening brief. While only Mr. Buzby, who personally extended and was repaid the loan, is accused of "self dealing," Messrs. Rice and Carrington also face potential liability for breach of fiduciary duty with respect to the loan transaction.

/ / /

1   Finally, under a heading entitled, "There is No Potential for Coverage for the Loan

2   Claim," Scottsdale argues it does not owe a duty to defend because the Loan Claim seeks

3   uninsurable disgorgement.  This argument was previously made by Scottsdale in support

4   of its motion for summary judgment, and it was rejected by this Court.

5                                                **II.**

6                    **STEM IS NOT AT THIS TIME SEEKING TO ADJUDICATE**

7                         **THE *AMOUNT* OF ITS DAMAGES**

8   Scottsdale begins with a straw man argument.  It contends Stem has "submitted no

9   evidence proving that it incurred or paid attorney's fees or costs related to the Loan

10   Claim, let alone reasonable fees and costs."  Scottsdale's Opposition, p. 5:12-13.  Indeed,

11   much of the Declaration of Brand Cooper filed in support of Scottsdale's opposition is

12   devoted to addressing the "reasonableness" of fees incurred by Stem in the defense of its

13   directors.

14   As Stem's notice of motion makes clear, however, Stem is not seeking an

15   adjudication of the <u>amount</u> of the reasonable defense expenses it has incurred to date

16   defending its directors.  *See* Stem's Notice of Motion, p. 2, fn.1 ("To be clear, Stem is

17   not seeking by this motion an adjudication of the specific amount of reasonable attorney

18   fees and costs it has incurred to defend its three directors, its right to prejudgment

19   interest thereon, or its right to any other damages.") (underscore added).

20   Instead, pursuant to the Court's June 14, 2021 Order, Stem seeks an adjudication

21   of "the legal measure of damages, in the form of defense fees and costs, that Scottsdale is

22   obligated to pay for breaching its duty to defend."  *See* Stem's Memorandum of Points

23   and Authorities, p. 4:7-9; *see also* Fed. R. Civ. P. 56(a) (a party may move for partial

24   summary judgment on a "part" of a claim or defense).

25   / / /

26   / / /

27   / / /

28   / / /

**III.**

***HOGAN'S DICTUM* WAS RENDERED OBSOLETE BY *BUSS***

As discussed in Stem's moving papers, courts and legal commentators are in agreement that since 1997, following the California Supreme Court's decision in *Buss*, *supra*, a breaching insurer has no right to allocate, or deduct from the damages it owes, the cost of defending non-covered claims.  The authors of California's leading treatise on insurance law are clear and unequivocal in their description of the damages an insurer owes for breaching its duty to defend:

**H. Damages for Breach of Duty to Defend**

\*\*\*

**Includes defense costs allocable to noncovered claims:** The insured may recover its defense costs, including attorney fees allocable to the defense of noncovered claims (because the insurer's duty to defend extends to all claims if any claim is potentially covered, *see* ¶ 7:629) unless the insurer can prove such fees were unreasonable or unnecessary.

Hon. H. Walter Croskey, *et al.*, CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION § 7:691.15 (The Rutter Group 2020); *see also id.* at § 12:652 ("By refusing to provide a defense, the insurer becomes liable for defense costs incurred by the insured allocable to claims *not even potentially covered* under the policy.") (italics in original).

Contending there exists an "exception" to this rule, Scottsdale points to a fifty-one year old case entitled *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553 (1970), in which the California Supreme Court stated, <u>in *dictum*</u>, that an insurer that has breached its duty to defend is tasked with producing "undeniable evidence" of the allocability of defense expenses.  *Id.* at 564.  Scottsdale seeks to elevate this outdated *dictum* from *Hogan* into an extant rule of California insurance law that would allow insurers – after breaching their duty to defend – to deduct from the damages they owe the fees and costs related solely to defending non-covered claims, provided they can satisfy an "undeniable evidence" standard of proof.  Scottsdale also cites two other cases – one of which was decided under Utah law, and both of which pre-date *Buss* – that it contends "recognized

1  the exception to the general rule" on allocation.  *See* Scottsdale's Opposition, p. 6:12-19,

2  citing *Etchell v. Royal Ins. Co.*,165 F.R.D. 523 (N.D. Cal. 1996) and *Crist v. Insurance*

3  *Co. of North America*, 529 F.Supp. 601, 605 (D. Utah 1982).

4        Scottsdale is a day late and a dollar short.  *Hogan's dictum* – as well as the

5  decisions in *Etchell* and *Crist* – were rendered obsolete by the California Supreme

6  Court's 1997 decision in *Buss, supra*.[1]  *Buss* holds that in a "mixed" action, in which

7  some of the claims are at least potentially covered and others are not, an insurer has a

8  duty to defend the action *"in its entirety."  Id.* at 58-59 (italics in original).  Accordingly,

9  as recognized by myriad legal authorities since *Buss* – including the California Courts of

10  Appeal, federal district courts, and leading commentators on insurance law – an insurer

11  found to have breached its duty to defend owes as damages all reasonable and necessary

12  defense expenses incurred by its insured in a "mixed" action, including expenses

13  allocable to claims not even potentially covered under the policy.  *See, e.g., KM Strategic*

14  *Mgmt., LLC v. Am. Cas. Co. of Reading, PA*, 2016 U.S. Dist. LEXIS 98273, **20-21

15  (C.D. Cal. July 25, 2016) ("having breached its duty to defend, American Casualty is

16  required, as a matter of law, to pay as damages all reasonable and necessary fees and

17  costs that plaintiffs incurred to defend against [the underlying actions], <u>including any</u>

18  <u>fees and costs related to the defense of claims for which there was not even a potential</u>

19  <u>for coverage</u>.") (underscore added); *see also Archdale v. American Intern. Specialty*

20  *Lines Ins. Co.*, 154 Cal.App.4th 449, 469 (2007) ("The theory behind allowing for

21  damages in contract law is that the injured party should receive as nearly as possible the

22  equivalent of the benefits of the contract as he or she would have received, had the

23  performance been rendered as promised."); *Comunale v. Traders & General Ins. Co.*, 50

24  Cal.2d 654, 660 (1958) (breaching insurer must

25  / / /

26

27        [1]    The Court in *Buss* went out of its way to describe its prior statement in *Hogan* as
28  "dictum and not holding," whilst also noting that the "undeniable evidence" standard is one
   "apparently otherwise unknown to the law[.]"  *Id* at 56.

1    "compensate the insured for all the detriment caused by the insurer's breach of the

2    express <u>and implied obligations</u> of the contract.") (underscore added).

3        Notably, Scottsdale's opposition does not once mention *Buss*.  Scottsdale's only

4    substantive response to the on-point legal authorities discussed in Stem's opening brief is

5    to argue that two of the cases cited by Stem actually support an allocation to uncovered

6    claims.  Scottsdale's Opposition, p. 7:3-16.  However, the two decisions Scottsdale refers

7    to, *KM Strategic, supra*, and *Thane International, Inc. v. Hartford Fire Ins. Co.*, 2009

8    U.S. Dist. LEXIS 13696 (C.D. Cal. February 19, 2009), hold <u>exactly to the contrary</u>.

9        In *KM Strategic*, *supra,* after rejecting the breaching insurer's allocation argument,

10   the district court simply noted that its "ruling does not preclude American Casualty from

11   attempting to demonstrate that certain fees and costs incurred by plaintiffs were

12   'unreasonable or unnecessary.'"  *See KM Strategic, supra*, 2016 U.S. Dist. LEXIS 98273

13   at *21, fn.5.  Likewise here, if the Court were to grant Stem's motion, this would not

14   preclude Scottsdale from challenging at trial the reasonableness and necessity of the fees

15   Stem has incurred defending its directors.  As for *Thane, supra*, the district court could

16   not have been clearer in rejecting the breaching insurer's allocation argument.  *See*

17   *Thane, supra* at *16 ("'[The insurer's] argument that its duty to defend should be

18   apportioned with its insured . . . is contrary to California law.'"), quoting *State v. Pacific*

19   *Indem. Co.*, 63 Cal.App.4th 1535, 1548 (1998).[2]

20       In short, Scottsdale's outdated *Hogan dictum* argument should be rejected.

21   Following the California Supreme Court's 1997 decision in *Buss*, a breaching insurer

22   now owes as damages <u>all</u> reasonable and necessary defense expenses incurred by its

---

23       [2]    The court in *Thane* went on to reject the breaching insurers' argument that they
24   were entitled to "reimbursement."  *Id.* at 16.  The court held the insurers had no such right since
     they "breached their duty to defend their insured, and thus did not incur any expenses in
25   defending the covered (and uncovered) claims in the . . . underlying lawsuit."  *Id.*  After holding
     that the breaching insurers had "no basis" to seek reimbursement, the Court then noted that
26   "<u>even if</u>" the insurers were entitled to reimbursement, they had not met their burden of proof.  *Id.*
     at **16-17 (underscore added).  As noted by the court in *KM Strategic, supra*, far from
27   articulating a "right" to reimbursement, "the court [in Thane] was merely driving a final nail in
     the coffin of the insurer's allocation argument rather than acknowledging any 'right' to offset."
28   *KM Strategic, supra*, at 20.

---

insured in a "mixed" action, including expenses allocable to claims not even potentially covered under the policy.

**IV.**

**IT IS LEGALLY IRRELEVANT HOW MUCH STEM HAS INCURRED THUS FAR TO DEFEND THE BUZBY LOAN CLAIM**

Scottsdale asserts that "Stem Has Not Incurred Any Defense Fees and Costs for the Loan Claim."  Scottsdale Opposition, pp. 5:25 - 7:16.  As discussed *supra*, however, a breaching insurer in California, such as Scottsdale, owes as damages the entirety of the defense expenses incurred by its insured in a "mixed" action.  *See, e.g., KM Strategic, supra*.  Accordingly, it is legally irrelevant how much Stem has incurred to date to defend its directors against the Loan Claim in the underlying 2017 Shareholder Lawsuit.

Although not relevant for purposes of this motion, Stem nonetheless wishes to dispute Scottsdale's incorrect statement that it "Has Not Incurred Any Defense Fees and Costs for the Loan Claim."  The pleadings in the 2017 Shareholder Lawsuit include a total of *five* complaints, from the Original Complaint filed on May 12, 2017 to the Fourth Amended Complaint filed on June 30, 2021.[3]  Declaration of Gary W. Osborne ("Osborne Decl."), ¶2.  Each contains the same allegations regarding the Loan Claim. The Answers filed by Messrs. Buzby, Rice and Carrington assert not only general denials, but also affirmative defenses applicable to the Loan Claim, such as "Lack of Standing," "Business Judgment Rule," and "No Breach," among others.  *See* Rice Answer, attached to the separately-bound exhibits as Exhibit "I," pp. 0148-151 [Aff. Defs. No. 8, 10, 11, 16 and 17]; Buzby Answer at Exhibit "J," pp. 0157-160 [Aff. Defs. No. 5, 7 and 17]; and Carrington Answer at Exhibit "K," pp. 0164-167 [Aff. Defs. No. 5, 7 and 17]; Osborne Decl., ¶¶3-5.

/ / /

/ / /

---

[3]     The underlying pleadings are still not final because the defendants have successfully demurred and/or moved to strike each of the first four.

1   In addition, the underlying discovery contains the following request for production

2   of documents which is expressly directed at the Loan Claim:

3       All DOCUMENTS relating to the alleged loan that Defendant
        Buzby made to STEM in 2017, referenced in paragraphs 79

4       through 85 of the COMPLAINT.

5   Request for Production to Reineccius, dated January 11, 2019, at Exhibit "L," p. 0176,

6   Req. No. 27.  This request is repeated verbatim, or in substance, in four other discovery

7   requests.  *See* Subpoena to Berlin at Exhibit "M," p. 0184, Req. No. 27; Subpoena to

8   Klingsporn at Exhibit "N," p. 0192, Req. No. 24; Subpoena to Grimm at Exhibit "O," p.

9   0200, Req. No. 24; and Request for Production to Buzby at Exhibit "P," p. 207, Req. No.

10  15; Osborne Decl., ¶¶6-10.

11      Scottsdale also ignores general tasks necessarily performed by the three directors'

12  defense counsel – such as, for example, reviewing and analyzing the underlying

13  complaints, drafting answers, evaluating damages and liability, drafting discovery, and

14  attending to mediation – which would encompass <u>all claims</u> asserted against the directors

15  in the underlying litigation.  Osborne Decl, ¶11.

16      And finally, the 2017 Shareholder Lawsuit is ongoing, and consequently

17  Scottsdale's duty to defend <u>is still ongoing</u>.  *See Lambert v. Commonwealth Land Title*

18  *Ins. Co.*, 53 Cal.3d 1072, 1077 (1991) ("The duty [to defend] commences upon tender of

19  the defense, and continues until the underlying lawsuit is concluded.").  Scottsdale does

20  not know – and nor for that matter does Stem – to what extent the underlying plaintiffs

21  will focus their attention on the Loan Claim, and how much Stem will ultimately be

22  forced to incur defending its directors against this claim.

23      In sum, Scottsdale's assertion that "Stem Has Not Incurred Any Defense Fees and

24  Costs for the Loan Claim" is both legally irrelevant and factually incorrect.  It also

25  ignores the fact that the underlying 2017 Shareholder Lawsuit is still ongoing.

26  / / /

27  / / /

28  / / /

1

**V.**

2

**MESSRS. RICE, CARRINGTON AND BUZBY *ALL* FACE POTENTIAL**

3

**LIABILITY FOR THE LOAN TRANSACTION**

4

Scottsdale argues that Messrs. Rice and Carrington do not face potential liability

5

with regard to the Loan Claim because the original underlying complaint does not

6

expressly allege that (1) they were "involved" in the loan transaction, (2) they earned any

7

"ill-gotten gain" from the transaction, or (3) they breached any "fiduciary duty" in

8

connection with the transaction. *See* Scottsdale's Opposition, p. 7:24-27.

9

As for whether Messrs. Rice and Carrington were "involved" in the loan

10

transaction between Stem and Mr. Buzby – which was a loan made by Mr. Buzby to help

11

the company secure an important contract with Southern California Edison[4] – it may be

12

fairly inferred that as directors of Stem they were aware of the loan and its terms.

13

Indeed, Mr. Carrington's name appears on the loan documentation.[5]  *See Scottsdale Ins.*

14

*Co. v. MV Transp.*, 36 Cal.4th 643, 655 (2005) ("If any facts stated or fairly inferable in

15

the complaint, or otherwise known or discovered by the insurer, suggest a claim

16

potentially covered by the policy, the insurer's duty to defend arises and is not

17

extinguished until the insurer negates all facts suggesting potential coverage.").

18

Scottsdale states "[t]here is no allegation of any ill-gotten gain on the part of Rice

19

or Carrington."  *See* Scottsdale's Opposition, p. 7:25-26.  This, however, is unsurprising.

20

Neither of them personally extended the loan.  Only Mr. Buzby did, and it is he that is

21

accused of "self dealing" in the original underlying complaint.  *See Stephen A. Solomon*

22

*v. Armstrong*, 747 A.2d 1098, 1113 n.36 (Del. Ch. 1999) ("Self-dealing claims may

23

properly be seen as a subset of breach of loyalty claims.").  For their part, Messrs. Rice

24

25

    [4]    *See* the Court's Order dated May 3, 2021 at Exhibit "C," p. 0054:5-11.

26

    [5]    Scottsdale attached as Exhibit JJ to its motion for summary judgment a document

27

which it identified as "Buzby's Promissory Note."  This document contains not only the signature of David Buzby, but also the signature of John Carrington.  *See* Scottsdale Appendix of Exhibits, attached as Exhibit "Q," p. 0213; Scottsdale Exhibit "JJ," attached as Exhibit "R," p.

28

0217; Osborne Decl., ¶¶12-13.

1    and Carrington are more broadly accused in paragraph 85 of the original underlying

2    complaint of being "conflicted," and not comprising an "independent board," with

3    respect to "<u>each act and omission described herein [*i.e.*, in the underlying complaint][.]</u>"

4    This allegation potentially encompasses the loan transaction which is described earlier at

5    paragraph 79 of the underlying complaint.

6         Scottsdale's contention that Messrs. Rice and Carrington are not personally

7    accused of breaching their "fiduciary duty" in connection with the loan transaction is

8    incorrect.  As discussed in Stem's motion, the original underlying complaint at paragraph

9    94 expressly incorporates into the Count for Breach of Fiduciary Duty "the allegations

10   stated in the preceding paragraphs of this Complaint as if fully set forth herein."  Exh.

11   "A," p. 0016, ¶94.  This includes paragraph 79's allegations concerning Stem's loan

12   transaction with Mr. Buzby, as well as paragraph 85's allegations that the board was

13   "conflicted" and did not comprise an "independent board" with respect to "each act and

14   omission described herein."  It is then alleged that Messrs. Rice, Carrington and Buzby

15   breached their fiduciary duties of loyalty, care and good faith resulting in the plaintiffs

16   suffering damages in an amount to be determined at trial.

17        At a very minimum there exists a potential – *i.e.*, a "conceivable" theory – that

18   Messrs. Rice and Carrington (along with Mr. Buzby) all face liability for the Loan Claim

19   in the 2017 Shareholder Lawsuit.  *See Montrose Chem. Corp. v. Superior Court*, 6

20   Cal.4th 287, 300 (1993) (duty to defend will only be excused if a claim *"can by no*

21   *conceivable theory raise a single issue which could bring it within the policy coverage."*

22   [citation and internal quotes omitted]) (italics in original).

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**VI.**

**SCOTTSDALE'S "DISGORGEMENT" ARGUMENT**

**IS IMPROPER AND FLAWED**

Scottsdale's final argument, made under a heading entitled, "There is No Potential for Coverage for the Loan Claim," is that it does not owe a duty to defend the Loan Claim because it seeks uninsurable disgorgement. *See* Scottsdale's Opposition, pp. 8:8 - 10:3.

Scottsdale previously made the uninsurable "Loss" argument in support of its summary judgment motion. *See* Scottsdale Motion for Summary Judgment, pp. 19:23 - 20:20. The Court rejected the argument, noting that "[b]ecause Scottsdale has not explained why other losses like attorneys' fees, costs, and damages are excluded from the definition of 'Loss,' Scottsdale's argument fails to establish that the general coverage provision does not apply." *See* Stem's Exhibit "C," p. 0068, fn.7.

On June 7, 2021, Scottsdale filed a motion for administrative relief seeking leave to file a second motion for summary judgment "concerning whether the Buzby Loan Claim alleges a Loss as that term is defined by the Policy." *See* Scottsdale's Motion for Administrative Relief at Exhibit "S," pp. 0220:9-221:18. The Court denied Scottsdale leave to file such a motion, *i.e.*, one re-addressing potential coverage for the Buzby Loan Claim, on the ground that Scottsdale "should have moved for reconsideration." *See* Stem's Exhibit "F," p. 0089:22-28. The Court also stated that if Scottsdale's aim is to "present new arguments relevant to that issue, then [it] should have presented those arguments before." *Id.*

Undeterred, Scottsdale has included in its opposition to Stem's motion – a motion which concerns the legal measure of Stem's damages – a section re-arguing to this Court why it believes the Buzby Loan is not potentially covered in the first instance. By so doing, Scottsdale essentially seeks to accomplish what it is has been barred from doing on its own motion, and what it has failed to do in a motion for reconsideration, *i.e.*, present arguments why this Court should reconsider its May 3, 2021 Order regarding the

1   duty to defend.  This amounts to a disregard of Civil L.R. 7-9, as well as this Court's

2   prior order denying Scottsdale's administrative motion.  *See MLC Intellectual Prop.,*

3   *LLC v. Micron Tech., Inc.*, 2019 U.S. Dist. LEXIS 180948, *3 (N.D. Cal. Oct. 17, 2019)

4   (finding plaintiff's opposition to defendant's motion for summary judgment was a

5   "disguised and improper" motion for reconsideration.).

6        Besides being improper, Scottsdale's argument is also flawed.  Scottsdale presents

7   no evidence that the only remedy the underlying shareholder plaintiffs are seeking in

8   connection with the Buzby Loan Claim is disgorgement.  Moreover, even if the

9   underlying shareholder plaintiffs were to seek a disgorgement remedy, which remains to

10  be seen since the underlying 2017 Shareholder Lawsuit is still ongoing with no trial date

11  set, Stem's directors are <u>also</u> facing both actual and potential liability for other items of

12  "Loss" such as defense expenses, damages, plaintiffs' attorney fees and costs.  *See*

13  Stem's Exhibit "A," p. 0019-20 [Prayer For Relief]; *see also Hicks v. Clayton*, 67

14  Cal.App.3d 251, 264 (1977) ("Where a breach of fiduciary duty occurs, a variety of

15  equitable remedies are available, including imposition of a constructive trust, rescission,

16  and restitution, <u>as well as incidental damages</u>.") (underscore added)

17       These are items of "Loss" covered by Scottsdale's policy, and insurable under

18  California law.  *See* Scottsdale's 2016-2017 Policy, Stem Exhibit "G," p. 0103 (defining

19  "Loss" to include, *inter alia*, "damages," and "Costs, Charges and Expenses"); *see also*

20  *Safeway Stores v. National Union Fire Ins. Co.*, 64 F.3d 1282, 1286-87 (9th Cir. 1995)

21  (affirming that payment of plaintiffs' attorneys fees, as well as the insured's defense

22  costs, were covered by D&O policy); *Southern California Pizza Co., LLC v. Certain*

23  *Underwriters at Lloyd's, London*, 40 Cal.App.5th 140, 154 (2019) (holding that the

24  insured's "defense costs" are themselves covered losses since they are expressly included

25  in the policy's definition of "loss"); *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th

26  478, 508  (1998) ("Obviously, the public policy concerns applicable to an insurer's

27  indemnification do not extend to the provision of a defense.").

28  / / /

1    Stem's directors plainly face potential liability for items of "Loss" covered by

2    Scottsdale's policy, and insurable under California law.  *See Unified Western Grocers,*

3    *Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (9th Cir. 2006) (D&O insurer's

4    restitution argument rejected because the "allegations and asserted claims in the

5    Underlying Complaint do not necessarily restrict all potential recovery to restitution.").

6        For the reasons stated, Scottsdale's "disgorgement" argument is both improper and

7    fundamentally flawed, and so should be rejected.

8                                                          **VII.**

9                                                  **<u>CONCLUSION</u>**

10       In sum, judges and commentators agree that after the *Buss* decision an insured is

11   owed the entirety of the reasonable and necessary defense costs it was forced to incur as

12   a consequence of its insurer's breach of the duty to defend.  Moreover, having denied

13   coverage, paid nothing, and failed to reserve a reimbursement right, a breaching insurer

14   possesses no right of reimbursement.  If it had such a right, it would, anomalously, be in

15   a better position than a defending insurer which failed to reserve its rights, leading to an

16   absurd and unfair result, something the law does not countenance.

17       For the reasons set forth in Stem's opening brief, and herein, Scottsdale's

18   arguments should be rejected.  Stem respectfully submits that its motion for partial

19   summary judgment regarding the legal measure of damages Scottsdale owes for

20   breaching its duty to defend should be granted.

21   DATED: July 29, 2021                    OSBORNE & NESBITT LLP

22

23                                          By: /s/Gary W. Osborne
                                                Gary W. Osborne
24                                              Attorney for Plaintiff, STEM, INC.

25

26

27

28